*** FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-10-0000173
02-NOV-2015
09:20 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Petitioner/Plaintiff-Appellee,

vs.

LAWRENCE DEMELLO, JR.,
Respondent/Defendant-Appellant.

SCWC-10-0000173

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-10-0000173; CASE NO. 2P108-02074)

NOVEMBER 2, 2015

RECKTENWALD, C.J., NAKAYAMA, AND McKENNA, JJ.,
WITH POLLACK, J., DISSENTING, WITH WHOM CIRCUIT JUDGE PERKINS,
IN PLACE OF ACOBA, J., RECUSED, JOINS

OPINION OF THE COURT BY NAKAYAMA, J.

Petitioner/Plaintiff-Appellee the State of Hawaiʻi

(State) has asked this court to determine whether the

Intermediate Court of Appeals (ICA) gravely erred when it held

that lost wages may not be awarded as restitution pursuant to HRS

§ 706-646 (Supp. 2006). We hold that HRS § 706-646 permits restitution for reasonable and verified lost wages in appropriate circumstances. Here, the District Court of the Second Circuit (district court) acted within its discretion when it ordered Respondent/Defendant-Appellant Lawrence DeMello, Jr. (DeMello) to pay restitution for wages that the Complaining Witness (CW) lost as a result of DeMello's unlawful conduct.

## I. BACKGROUND

On May 10, 2008, a physical altercation involving DeMello and the CW occurred at the CW's home. As a result of the altercation, DeMello was charged with one count of harassment in violation of HRS § 711-1106(1)(a) (Supp. 1996) and one count of trespass in violation of HRS § 708-815(1) (1993). The district court held a bench trial on December 14, 2009.[1]

At trial, the CW testified that on the night in question, she, her husband, and DeMello had been arguing about the proper care of her husband's son. The argument escalated into a physical altercation. Eventually DeMello grabbed the CW by the hair and dragged her about ten feet across her lawn. The CW testified that she experienced immediate, excruciating pain, and that she blacked out. At the close of trial, the district court found DeMello guilty of both charges.

---

[1]     The Honorable Kelsey T. Kawano presided.

At the State's request, the district court held restitution hearings on August 2, 2010, and September 20, 2010. During the first hearing, the CW testified that in the days following the altercation, she experienced chronic pain in her neck and shoulders, blurred vision, and that she had difficulty standing. The CW also testified that due to her injuries, she was unable to perform her job duties as a hairdresser for a ten-day period. The State entered the CW's hairdressing appointment ledger into evidence. With respect to the ledger, Defense counsel stated:

> We will stipulate that [the CW] will say each of these names that are listed on her ledger, that she will say how much she charged, and . . . the taxes added, . . . and that the total amount is indicated as $1,155.12.
>
> We are not stipulating that this is true, only that this is what [the CW] will testify to.
>
> At the second hearing, DeMello argued:
>
> With respect to the lost wages and therapy, we would argue that that is not applicable to the restitution statute. . . . .
>
> We would argue that the Legislature, when they amended [HRS § 706-646] in 1998, did not intend to include wage loss and therapy.
>
> And [House] Standing Committee Report Number 683-98, the House stated . . . "wage loss was 'more appropriate' for the civil arena."

The district court disagreed. It ordered DeMello to pay $3,387 in restitution, including $1,155 in restitution for the ten-day period when the CW was unable to work.

On appeal, the ICA reversed. It held, among other

3

things, that lost wages are not a compensable category of restitution pursuant to HRS § 706-646.  Accordingly, the ICA vacated the restitution order and remanded for a new restitution hearing.[2]

## II. STANDARD OF REVIEW

The proper interpretation of a statute is a question of law that is reviewed de novo under the right/wrong standard. Gillan v. Gov't Emps. Ins. Co., 119 Hawaiʻi 109, 124, 194 P.3d 1071, 1086 (2008).

## III. DISCUSSION

HRS § 706-646(2) (subsection 2) provides, in relevant part: "The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim."  HRS § 706-646(3) (subsection 3) provides, in relevant part: "Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to: (a) Full value of stolen or damaged property . . . ; (b) Medical expenses; and (c) Funeral and burial expenses incurred as a result of the crime."  The State has asked this court to determine whether HRS § 706-646 authorizes restitution

[2]    The ICA also remanded for a new hearing on the apportionment of medical expenses and for resentencing on DeMello's harassment conviction. Neither of those determinations were challenged in the State's application for writ of certiorari.

for lost wages.  We hold that HRS § 706-646 permits restitution for reasonable and verified lost wages in appropriate circumstances.[3]

## A.    The Plain Language of HRS § 706-646

The plain language of a statute is "the fundamental starting point of statutory interpretation."  State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (internal quotations omitted).  "Courts are bound, if rational and practicable, to give effect to all parts of a statute and no clause, sentence or word shall be construed as superfluous, void or insignificant if construction can be legitimately found which will give force to and preserve all words of the statute."  Dawes v. First Ins. Co. of Hawaiʻi, Ltd., 77 Hawaiʻi 117, 135, 883 P.2d 38, 56 (1994) (citation omitted).  Additionally, "this court must presume that the legislature meant what it said and is further barred from rejecting otherwise unambiguous statutory language."  Morgan v. Planning Dep't, Cnty. of Kauai, 104 Hawaiʻi 173, 185, 86 P.3d 982, 994 (2004) (quoting Sato v. Tawata, 79 Hawaiʻi 14, 23, 897 P.2d 941, 950 (1995) (Ramil, J., dissenting)).

[W]here there is no ambiguity in the language of a statute,

---

[3]     We define "wage" to mean: "[A] payment usu. of money for labor or services usu. according to contract and on an hourly, daily, or piecework basis."  Merriam-Webster's Dictionary of Law 529 (1996).  Although some sources define "lost wages" to encompass loss of earning capacity, Black's Law Dictionary 1812 (10th ed. 2014), that concept is not at issue in this case and would seem to fall outside the scope of HRS § 706-646's requirement that lost wages be "verified" rather than merely quantifiable.

> and the literal application of the language would not produce an absurd or unjust result, clearly inconsistent with the purposes and policies of the statute, there is no room for judicial construction and interpretation, and the statute must be given effect according to its plain and obvious meaning.

State v. Palama, 62 Haw. 159, 161, 612 P.2d 1168, 1170 (1980) (brackets in original, citation omitted).

The plain language of HRS § 706-646(2) states that the court "shall order the defendant to make restitution for . . . losses suffered by the victim."  In other words, subsection 2 is mandatory and its scope is broad.  However, subsection 2 imposes four requirements before restitution must be awarded; the victim's losses must be (1) "reasonable," (2) "verified," (3) "suffered . . . as a result of the defendant's conduct," and (4) "requested by the victim."  These limitations impose thresholds that relate to proof and to procedure, but do not limit the categories of restitution that are compensable.  Thus, as subsection 2 contains no language that would exclude lost wages, an award that did not compensate a victim for lost wages would not fulfill the court's mandatory duty to order restitution for "losses" in appropriate circumstances.  Accordingly, the plain language of subsection 2 appears to require restitution for lost wages subject to the aforementioned limitations.

Subsection 2 operates in harmony with subsection 3, which also is mandatory and broad in scope.  Subsection 3 contains both a prefatory clause and an illustrative list.

6

Turning first to the prefatory clause, subsection 3 mandates that "[r]estitution shall be a dollar amount that is sufficient to reimburse any victim <u>fully</u> for losses." (Emphasis added). An award that did not include reasonable and verified income lost as a result of the defendant's unlawful conduct would not reimburse a victim fully for losses. Therefore, the plain language of the prefatory clause also appears to require restitution for lost wages.

Subsection 3's illustrative list states, in context: "Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, <u>including but not limited to</u>: (a) Full value of stolen or damaged property . . .; (b) Medical expenses; and (c) Funeral and burial expenses." (Emphasis added). This list is an inclusive list rather than an exhaustive one. See <u>State v. Mita</u>, 124 Hawaiʻi 385, 391, 245 P.3d 458, 464 (2010) (explaining that the phrase "shall include but not be limited to" provides "an inclusive, rather than exclusive, list of examples"); <u>see also</u> <u>Black's Law Dictionary</u> at 880 (10th ed. 2014) ("The participle <u>including</u> typically indicates a partial list . . . [b]ut some drafters use phrases such as <u>including without limitation</u> and <u>including but not limited to</u> -- which mean the same thing."). In other words, the legislature's use of the phrase "including but not limited to" indicates that the three categories of losses enumerated in

7

subsection 3 are not the only categories of losses that may be recovered pursuant to the statutory scheme. Any other reading would render the phrase "including but not limited to" meaningless.

Even if subsection 3 were to be viewed as a definitional parameter, verified lost wages are similar in kind to the losses illustrated in subsection 3 -- verified pecuniary losses. See Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawaiʻi 309, 321, 47 P.3d 1222, 1234 (2002) (stating that pecuniary losses are "those damages (either general or special) which can be accurately calculated in monetary terms such as loss of wages and cost of medical expenses"). Indeed, lost wages are routinely grouped with the types of losses illustrated in subsection 3. See, e.g., State Farm Mut. Auto. Ins. Co. v. Dacanay, 87 Hawaiʻi 136, 138 n.3, 952 P.2d 893, 895 n.3 (App. 1998) ("Special damages are often considered synonymous with pecuniary loss and include such items as medical and hospital expenses [and] loss of earnings."). Of course, pecuniary losses that are merely quantifiable rather than verified, would not comport with the requirements of subsection 2.

Requiring restitution for reasonable and verified lost wages would not lead to an absurd result. One purpose motivating the passage of HRS § 706-646 were the perceived gaps in victim compensation through the Crime Victim Compensation Commission

8

(CVCC). See H. Stand. Comm. Rep. No. 683-98, in 1998 House Journal, at 1305 ("Although the Criminal Injuries Compensation Commission helps victims by providing some compensation, victims of property crimes and some violent crimes are not eligible for any compensation from the Commission.").[4]  Here, due to the nature of DeMello's crimes, the CW would not have been eligible for an award from the CVCC.  See HRS §§ 351-31 and 351-32.  Thus, our interpretation of HRS § 706-646 is in accordance with the legislature's underlying purpose to provide restitution for victims who are ineligible for CVCC compensation.

Additionally, restitution for reasonable and verified lost wages would not place an unreasonable administrative burden on trial courts.  HRS § 706-646 already requires the allocation of court resources to provide restitution for medical expenses, especially where apportionment for a pre-existing, symptomatic injury is at issue.  See Montalvo v. Lapez, 77 Hawaiʻi 282, 299, 884 P.2d 345, 362 (1994) (requiring apportionment of damages caused by a pre-existing, symptomatic injury).  In most cases, the additional burden of adjudicating reasonable and verified lost wages will be consolidated into other hearings that trial courts are already required to hold.  Furthermore, HRS § 706-646, according to its terms, safeguards against adjudication of unduly

---

[4]    The CVCC was originally called the Criminal Injuries Compensation Commission.  See 1967 Haw. Sess. Laws Act 226, § at 332.

complex wage loss issues.  Where lost wages cannot be verified, which may be the case if the victim was unemployed or if the request is for expected future income, adjudication will require a more extensive civil proceeding.

In sum, there is nothing in the language of HRS § 706-646 to suggest that the kind of losses at issue in this case, reasonable and verified lost wages, would be unrecoverable in a restitution proceeding.  Not only are such losses capable of adjudication in the type of streamlined proceedings contemplated by the statute, they comport with the statutory mandate that the court "shall order the defendant to make restitution for . . . losses suffered by the victim . . . [in] a dollar amount that is sufficient to reimburse any victim fully for losses."  Therefore, in accordance with the plain language of the statute, we hold that lost wages are recoverable pursuant to HRS § 706-646.

**B.    The Legislative History of HRS § 706-646**

If statutory language is ambiguous or doubt exists as to its meaning, "'[c]ourts may take legislative history into consideration.'"  Franks v. City and Cnty. of Honolulu, 74 Haw. 328, 335, 843 P.2d 668, 671-72 (1993) (quoting Life of the Land v. City and Cnty. of Honolulu, 61 Haw. 390, 447, 606 P.2d 866, 899 (1980).  Even where statutory language appears unambiguous upon initial review, "an examination of sources other than the language of the statute itself" may be essential "to adequately

10

discern the underlying policy which the legislature seeks to promulgate . . . to determine if a literal construction would produce an absurd or unjust result, inconsistent with the policies of the statute."  Sato, 79 Hawaiʻi at 17, 897 P.2d at 944.

However, "we do not resort to legislative history to cloud a statutory text that is clear."  State v. Kalama, 94 Hawaiʻi 60, 64, 8 P.3d 1224, 1228 (2000) (internal citation and quotation marks omitted) (declining to rely on a legislative committee report expressing views that did not correspond to the statutory language ultimately enacted).  This court has repeatedly declined to rely on legislative history where the plain language of the statute did not produce an absurd result, even in situations where "the history may show that the legislature really meant and intended something not expressed by the phraseology of the statute."  State v. Mainaaupo, 117 Hawaiʻi 235, 251, 178 P.3d 1, 17 (2008) (internal quotations and citation omitted).

> We cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts.  We do not legislate or make laws.  Even where the Court is convinced in its own mind that the Legislature really meant and intended something not expressed by the phraseology of the Act, it has no authority to depart from the plain meaning of the language used.

State v. Dudoit, 90 Hawaiʻi 262, 271, 978 P.2d 700, 709 (1999) (emphasis removed) (quoting State v. Meyer, 61 Haw. 74, 77, 595

11

P.2d 288, 291 (1979)).

Additionally, the role of legislative history is limited to the extent it sheds reliable light on the enacting legislature's understanding of an otherwise ambiguous term. See Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 550 (2005). "'Statements by legislators or even committee reports need not reflect the purpose which a majority of the legislators believed is carried out by [a] statute.'" Dines v. Pac. Ins. Co., Ltd., 78 Hawaiʻi 325, 332, 893 P.2d 176, 183 (1995) (quoting Yoshizaki v. Hilo Hosp., 50 Haw. 150, 153 n.5, 433 P.2d 220, 223 n.5 (1967)). "Only 'unmistakable support in the history and structure of the legislation' can justify a rejection of otherwise unambiguous language." Richardson v. City and Cnty. of Honolulu, 76 Hawaiʻi 46, 57, 868 P.2d 1193, 1204 (1994) (quoting Blue Chips Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975) (Powell, J., concurring)).

In this case, the relevant legislative history encompasses the 1998 enactment of HRS § 706-646 and the 2006 amendments to the statute.

1. **1998 Enactment of HRS § 706-646**

In 1998, House Bill No. 2776 (H.B. 2776) was introduced to "permit an order for restitution in a criminal case to be enforceable as a civil judgment." H. Stand. Comm. Rep. No. 683-

12

98, in 1998 House Journal, at 1305. At that time, the collection of restitution was consigned to governmental entities that were only able to collect "a small fraction of the amount." Id. The legislation was also designed to provide restitution to victims who were ineligible for compensation from the CVCC. See id. ("Although the Criminal Injuries Compensation Commission helps victims by providing some compensation, victims of property crimes and some violent crimes are not eligible for any compensation from the Commission."). The proponents of H.B. 2776 acknowledged that "although a victim may bring a civil action against the defendant, this process is costly and time consuming." Id. Therefore, the legislature proposed "that victims should have a 'fast track' ability to be compensated for their losses . . . using all of the civil collection remedies." Id.; see also S. Stand. Comm. Rep. No. 3008, in 1998 Senate Journal, at 1224; Conf. Comm. Rep. No. 89, in 1998 Senate Journal, at 780.

H.B. 2776, as initially proposed, expressly included "wage loss" and the cost of "therapeutic treatment" in the partial list of compensable losses contained in subsection 3. However, the House Judiciary Committee removed those categories from subsection 3 prior to the second reading of H.B. 2776. See H. Stand. Comm. Rep. No. 683-98, in 1998 House Journal, at 1305-06. The committee stated:

> [A]llowing restitution for therapy and wage loss presents difficulty because these costs are often immeasurable. While the value of stolen or damaged property, medical expenses, and funeral and burial expenses can be determined with specificity, costs of therapy, which can last for months or years after the defendant is sentenced, are not. Also, wage loss may be measurable if the victim has an occupation at the time of the offense, but it becomes difficult to determine if the victim is unemployed at the time. Your Committee finds that this remedy is more appropriate for the civil arena.
>
> . . . .
>
> Accordingly, your Committee has amended this bill by:
>
> . . . .
>
> (2) Not allowing for reimbursement of wage loss incurred by the victim and cost of therapeutic treatment required by the victim to recover from the psychological and emotional effects of the offense in the restitution order.

H. Stand. Comm. Rep. No. 683-98, in 1998 House Journal, at 1305-06. Despite these statements, the legislature did not amend H.B. 2776 to expressly provide that lost wages were not recoverable, nor did it propose language that would have made subsection 3 an exhaustive list. Rather, H.B. 2776, as initially amended, appeared to encompass restitution for a broad scope of losses.

The Senate Ways and Means Committee attempted to clarify the scope of H.B. 2776 by deleting the word "fully" from subsection 3's full compensation clause. See S. Stand. Comm. Rep. No. 3008, in 1998 Senate Journal, at 1224 (explaining that the Committee deleted the word "fully" "to clarify the legitimate types of damages" that a victim could recover). It stated: "Reimbursing the victim 'fully' for losses may be interpreted as having an unlimited practical application, and allows for many

14

legitimate types of damages that may require a more extensive civil proceeding." Id.; see also H. Stand. Comm. Rep. No. 683-98, in 1998 House Journal, at 1305 (attempting to relegate wage loss to the civil arena). Thus, the Senate Ways and Means Committee's amendment attempted to effectuate the House's intent to limit the scope of compensable losses contained in H.B. 2776.

However, when House and Senate representatives convened in conference, the Conference Committee reinserted the word "fully" into the statute. See Conf. Comm. Rep. No. 89, in 1998 Senate Journal, at 780-81 ("Your Committee on Conference has amended this bill by: . . . . (2) Reinserting the word 'fully' in section (3) of the new section 706- (Victim Restitution")). The Conference Committee explained that it reinserted the word "fully" "so that restitution shall be a dollar amount sufficient to reimburse any victim fully for losses." Id. In light of the purpose behind the House's and the Senate's previous amendments to H.B. 2776, the Conference Committee's reinsertion of the word "fully" expresses the intent of both chambers to not categorically exclude such losses as wage loss from the scope of HRS § 706-646. See Demby v. Schweiker, 671 F.2d 507, 510 (D.C. Cir. 1981) (explaining that a conference report that presents the final statement of terms accepted by both houses is the most persuasive evidence of legislative intent, next to the statute itself). To the extent there is an alternative interpretation of

15

the legislative history, it does not provide the "unmistakable support" required to "justify a rejection of otherwise unambiguous [statutory] language."[5]  <u>Richardson</u>, 76 Hawaiʻi at 57, 868 P.2d at 1204.

### 2.   2006 Amendments to HRS § 706-646

The dissent focuses on the legislative history of the original 1998 version of HRS § 706-646 to argue that the legislature did not intend to allow recovery for "lost wages" in a restitution award.  Whatever the legislature may have stated in 1998, the 2006 amendments to Section 706-646 make it clear that reasonable and verified lost wages must be included in a restitution award when requested by a victim.

Section 22 of Act 230 of 2006 amended HRS § 706-646 as follows:

> SECTION 22. Section 706-646, Hawaiʻi Revised Statutes, is amended by amending subsections (2) and (3) to read as follows:
>
> "(2) The court [may] <u>shall</u> order the defendant to make restitution for <u>reasonable and verified</u> losses suffered by the victim or victims as a result of the defendant's offense[.] <u>when requested by the victim</u>.  The court [may] <u>shall</u> order restitution to be paid to the crime victim compensation commission in the event that the victim has been given an award for compensation under chapter 351.  <u>If the court orders payment of a fine in addition to restitution or a compensation fee, or both, the payment of restitution and compensation fee shall have priority over</u>

---

[5]      The dissent erroneously ascribes the intent of the entire legislature to a report from a single house committee that is contra-indicated by the plain language of the statute.  <u>See</u> <u>Dines</u>, 78 Hawaiʻi at 332, 893 P.2d at 183 ("Statements by legislators or even committee reports need not reflect the purpose which a majority of the legislators believed is carried out by [a] statute.").

> the payment of the fine, and payment of restitution shall have priority over payment of a compensation fee.
>
> (3) In ordering restitution, the court shall not consider the defendant's financial ability to make restitution in determining the amount of restitution to order. The court, however, shall consider the defendant's financial ability to make restitution for the purpose of establishing the time and manner of payment. The court shall specify the time and manner in which restitution is to be paid. Restitution shall be a dollar amount that is sufficient to reimburse any victim fully for losses, including but not limited to:
>
> (a)  Full value of stolen or damaged property, as determined by replacement costs of like property, or the actual or estimated cost of repair, if repair is possible;
>
> (b)  Medical expenses; and
>
> (c)  Funeral and burial expenses incurred as a result of the crime."

(Emphasis added). This amendment to HRS § 706-646 was one of numerous proposed amendments to the Hawaiʻi Penal Code included in the Report of the Committee to Conduct a Comprehensive Review of the Hawaiʻi Penal Code ("Penal Code Review Committee") Submitted to the Twenty-third Legislature of the State of Hawaiʻi on December 29, 2005. See S. Stand. Comm. Rep. No 3215, in 2006 Senate Journal, at 1557. According to this committee report, the proposals of the Penal Code Review Committee were recommended for adoption. Id.

Furthermore, according to the Comment of the Penal Code Review Committee regarding the proposed amendments to the restitution statute:

> (1) The proposed amendments to subsections (2) and (3) make it mandatory for the court to order a defendant to pay full restitution for reasonable and verified losses suffered by the victim of a crime when requested by the victim. An informal request for restitution may be sufficient. The

17

court is prohibited from considering the defendant's financial ability to make restitution in determining the amount of restitution to order.  The court, however, is required to consider the defendant's financial ability for the purpose of establishing the time and manner of payment.

. . . .

Restitution serves two purposes: (1) to repay crime victims for financial losses they have suffered as a result of crimes, and (2) to help rehabilitate offenders by requiring them to take responsibility for the consequences of their actions.  In 1975, the Legislature empowered courts to order a convicted person to pay restitution.  The committee report accompanying the bill stated:

Reparation and/or restitution by wrongdoers to their victims is basic to justice and fair play.  The penal system should not be excluded from this concept.  Your Committee believes that by imposing the requirement that criminal repay not only "society" but the persons injured by the criminal's acts, society benefits not once, but twice.  The victim of the crime not only receives reparation and restitution, but the criminal should develop or regain a degree of self respect and pride in knowing that he or she righted, to as great a degree as possible, the wrong that he or she had committed.  S.C. Rep. No. 425, 1975 House Journal at 1148.

The restorative justice envisioned by the Legislature in enacting restitution laws has not been fully realized. Under current law, courts cannot impose restitution unless they determine that the offender can afford to pay it.  This determination is difficult to make at sentencing because accurate information regarding the offender's true financial status is often unavailable and the offender's future earnings capacity is often unclear.

The proposed amendments would create a restitution system similar to the federal Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §[sic]3663A-3664.  Courts imposing restitution pursuant to the MVRA must order full restitution without consideration for the defendant's economic circumstances, but they are directed to consider the defendant's ability to pay in establishing a restitution payment schedule.

Penal Code Review Committee, Final Report 27j (2005) (emphasis added).  Thus, the 2006 amendments removed a judge's discretion to award restitution, and made restitution mandatory for "reasonable and verified" losses requested by a crime victim.

The Penal Code Review Committee report makes it clear

18

that the amendments were intended to require "full restitution for reasonable and verified losses," and to "create a restitution system similar to the federal Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §§ 3663A to 3664."  Id. at 27j-k.  Section 3663 of the MVRA provides in pertinent part, as it did in 2006 and 2012 at the time of this sentencing:

> (b) The order of restitution shall require that such defendant–
>
> . . . .
>
> (2) in the case of an offense resulting in bodily injury to a victim–
>
> (A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;
>
> (B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and
>
> (C) reimburse the victim for income lost by such victim as a result of such offense;

(Emphasis added).  The proposed amendments to HRS § 706-646 of the Penal Code Review Committee were adopted without change by the Legislature.  Thus, whatever the 1998 Legislature may have said, in accordance with the clear language of the statute as of 2006, reasonable and verified lost wages are to be included in a restitution award.

## IV. CONCLUSION

For the foregoing reasons, we vacate in part the ICA's November 18, 2013 Judgment on Appeal, affirm the district court's

order of restitution as it relates to lost wages in the amount of $1,155.00, and remand to the district court for further proceedings consistent with this opinion and the remainder of the ICA's opinion.[6]

| | |
|---|---|
| Artemio C. Baxa<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Audrey E. Stanley<br>(Jennifer D.K. Ng on the<br>briefs) for respondent | /s/ Sabrina S. McKenna |



---

[6]    The dissent asserts: "In this case, a court would have to determine whether [the CW] incurred the same chair rent and business costs during the time she could not work.  Presumably, [the CW] would not have incurred her ordinary inventory costs, and an order of restitution based on gross receipts, instead of net income, would seemingly not represent her actual loss."  Although this might be true in future cases, DeMello waived these arguments by failing to raise them before the district court and the ICA.