Electronically Filed
Supreme Court
SCWC-15-0000935
14-FEB-2018
09:21 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

DAWN MARIE ANZALONE,
Petitioner/Defendant-Appellant.

SCWC-15-0000935

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000935; FC-CR. NO. 15-1-0287)

FEBRUARY 14, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

Petitioner/Defendant-Appellant Dawn Marie Anzalone
(Anzalone) was charged with one count of custodial interference in
the first degree after she violated a court-ordered custody
visitation schedule and fled the State of Hawai'i with her two-year-
old son. Pursuant to an arrest warrant issued by the Family Court
of the Second Circuit (family court), Anzalone was arrested in
Florida and extradited back to Hawai'i. She did not challenge her

extradition.  Upon her return, she pleaded no contest to the charge against her in accordance with a plea agreement with Respondent/Plaintiff-Appellee State of Hawaiʻi (the State).

At sentencing, the State requested that Anzalone pay restitution to the State for the costs of her extradition pursuant to Hawaiʻi Revised Statutes (HRS) § 621-9(b).  Anzalone objected to the State's request for extradition costs.  Ultimately, the family court sentenced Anzalone to, inter alia, four years of probation and ordered her to pay over $4,000 in extradition costs as a condition of probation and as a free standing order.  On appeal, the Intermediate Court of Appeals (ICA) affirmed the family court's imposition of extradition costs as a condition of probation. However, based upon its determination that extradition costs could not be imposed as restitution under HRS § 706-646, the ICA ordered the family court to, on remand, modify the judgment to reflect the imposition of extradition costs as being pursuant to HRS § 621-9(b), and not as restitution.

We are presented with one question for review on certiorari:  whether the ICA gravely erred by affirming the family court's imposition of extradition costs as a condition of probation.  Based upon our interpretation of HRS § 621-9(b) and its application to the facts in this case, we conclude that the family court erroneously ordered Anzalone to reimburse the State for the costs of her extradition.  Accordingly, we hold that the ICA

2

gravely erred in affirming the family court's imposition of extradition costs. We also hold that the ICA erred by essentially imposing, on its own and in an appeal, extradition costs as a discretionary condition of probation. In taking such action to resolve Anzalone's appeal, the ICA improperly intruded upon the family court's discretionary authority to impose extradition costs and to determine the conditions of a defendant's probation.

Therefore, we vacate the ICA's April 5, 2017 judgment on appeal filed pursuant to its February 24, 2017 summary disposition order, vacate Anzalone's sentence in its entirety, and remand the case for sentencing anew.

## I. BACKGROUND

On October 3, 2014, the family court issued an order that awarded the father of Anzalone's son (Father), joint legal and physical custody of their two-year-old son. The order required Anzalone and Father to adhere to a visitation schedule that they had previously agreed upon, and designated a specific Longs Drugs parking lot as the location for child exchanges.

Pursuant to the visitation schedule, Anzalone was to drop their son off to Father on December 24, 2014. On that date, however, Anzalone did not show up to the designated Longs Drugs parking lot, and did not answer her phone when Father called her. Subsequently, Anzalone repeatedly failed to appear for child exchanges that had been scheduled. Father discovered that

Anzalone's cellular phone was no longer in service as of December 25, 2014, and was unable to contact Anzalone during this time.

On February 3, 2015, Father filed an ex parte motion for full legal and physical custody of Son, which was granted on March 20, 2015. Anzalone did not appear for the hearing on the motion.

## A. Family Court Proceedings

On June 2, 2015, Anzalone was charged with one count of custodial interference in the first degree in violation of HRS § 707-726(1)(a).[1]

The family court[2] issued a "Warrant of Arrest" (arrest warrant) on June 1, 2015. The arrest warrant directed law enforcement as follows:

> This Court HAVING FOUND PROBABLE CAUSE to believe that the defendant has committed the offense(s) indicated below,
> YOU ARE HEREBY COMMANDED on the INFORMATION of DETECTIVE RONALD BENNETT, verified by oath or declaration, to arrest and bring the defendant to the Circuit Court of the Second Circuit, Hoapili Hale, 2145 Main Street, Wailuku, Maui, Hawaii, for Arraignment and Plea before the Honorable [Judge Richard T. Bissen, Jr.]

---

[1]    HRS § 707-726(1)(a) (2014) provides:

> (1) A person commits the offense of custodial interference in the first degree if:
>     (a) The person:
>         (i) Intentionally or knowingly violates a court order issued pursuant to chapter 586, or intentionally or knowingly takes, entices, conceals, or detains the minor from any other person who has a right to custody pursuant to a court order, judgment, or decree; and
>         (ii) Removes the minor from the State[.]

[2]    The Honorable Richard T. Bissen, Jr. presided.

4

The arrest warrant additionally contained the following advisement, directed to Anzalone:

> DEFENDANT:  <u>If you are released from custody by this Court Order</u>, with or without bail, it is upon condition that you will subsequently appear in court for all proceedings in connection with the charge(s) in this case.  FAILURE TO APPEAR MAY SUBJECT YOU TO PROSECUTION FOR BAIL JUMPING, which can be a felony with a five-year term of incarceration.

(Emphasis added.)

On June 11, 2015, Anzalone was arrested in Florida and extradited back to Maui, Hawaiʻi.  Anzalone did not challenge the extradition.  At a hearing held on June 12, 2015, Anzalone entered a plea of not guilty.

On August 18, 2015, Anzalone filed a change of plea form, which indicated that she was changing her plea to no contest and that she was moving to defer the acceptance of her plea.  Attached to her change of plea form was a plea agreement, which provided, <u>inter alia</u>:  "The State reserves the right to seek restitution for extradition costs to the State, in an amount to be determined by probation; Defendant shall have the right to object."

At a hearing held on the same day, the family court reviewed Anzalone's change of plea form with her in its entirety, ensuring that Anzalone:  (1) was pleading of her own free will and with a clear mind; (2) was aware of the consequences of pleading no contest, such as the possible sentence she may

5

receive; (3) understood the constitutional rights she was waiving by virtue of pleading no contest; and (4) comprehended the terms of the plea agreement attached to the change of plea form, and that the family court was not required to follow the agreement. As it reviewed Anzalone's change of plea form, the family court ensured that Anzalone understood that "the State reserve[d] the right to seek restitution for extradition costs to the State in an amount to be determined by Probation" and that "Defendant shall have the right to object."

After the family court reviewed Anzalone's change of plea form with her on the record, Anzalone pleaded no contest to the charge against her. The family court found that Anzalone "voluntarily, knowingly, and intelligently enter[ed] her plea with a full understanding of the charge against her and the consequences of her plea." Subsequently, the family court stated that it was going to "reserv[e] [making a] finding of guilt until the motion to defer is heard," ordered that a presentence investigation report be prepared, and placed Anzalone on supervised release pending sentencing.

On October 28, 2015, the State filed a certification of extradition costs with the family court. The certification was supported by the prosecutor's declaration, which stated that Anzalone was "extradited to Hawaii from Fort Meyers, Florida on the court's no bail warrant issued on June 2, 2015, for Custodial

6

Interference in the First Degree," and that "the State incurred the cost of $4,581.93 to extradite Defendant, breakdown is as follows: Airfare, $3,650.00, Per Diem $725.00, Car rental $112.90, hotel $45.90, and other costs $48.13." Attached to the prosecutor's declaration were copies of the invoices that supported the value of Anzalone's extradition costs.

That same day, a hearing was held on Anzalone's sentencing and her motion to defer the acceptance of her no contest plea (DANC Motion). At the outset, the prosecutor stated that he had filed a certification of extradition costs that morning, and that he had served a copy on Anzalone shortly before the hearing started. Anzalone "object[ed] to payment of the extradition costs."

Anzalone then presented argument on her DANC Motion. Anzalone contended that her DANC Motion should be granted because her prior criminal record was minimal, she already spent a considerable amount of time in custody, she secured a full-time job and was in the process of securing permanent housing, and she assembled a community of support. The State did not oppose Anzalone's DANC Motion because the presentence investigation report was "really positive."

With regard to extradition costs, the State contended that it was requesting extradition costs pursuant to HRS § 621-

9(b)[3] because despite the positive progress Anzalone was making:

> The bottom line is all this should not have happened, her taking the law into her own hands, violating the child custody order, taking the child out of the jurisdiction of Maui, in fact, to the mainland, eventually relocated in Florida. There was a lot of time, effort, and money spent in trying to apprehend her, and she just simply disregarded a Court order.
>     It's a very serious violation in the sense that it does take the child away from the other parent in this case. . . .
>
>         . . . .
>
>     Again, by taking the law into her own hands, taking the child out of the jurisdiction and disobeying that Court order, she really caused a lot of havoc and a lot of time and effort being made in order to find her and the child.

Anzalone countered that HRS § 621-9(b) did not apply because the statute was "limited to a defendant in criminal cases, in 704 proceedings, or a petitioner in a post conviction proceeding like a Rule 40." She further argued that she should not be required to pay extradition costs because "[s]he was

---

[3]     HRS § 621-9(b) (1993) provides:

> Whenever the presence of a defendant in a criminal case or in a proceeding under chapter 704 or a petitioner in a post conviction proceeding who is outside the judicial circuit is mandated by court order or bench warrant to appear, the cost of airfare, ground transportation, any per diem for both the defendant or petitioner and sufficient law enforcement officers to effect the defendant's or petitioner's return, shall be borne by the State. All such expenses shall be certified by the court or public prosecutor or the attorney general. Duly certified claims for payment shall be paid upon vouchers approved by the state director of finance and warrants drawn by the state comptroller. <u>The court may order the nonindigent defendant or petitioner who was returned to the State of Hawaii to reimburse the State for the costs of such extradition or return as specifically described above.</u>

(Emphasis added.)

unaware of the existence of the warrant" for her arrest, and averred that had she been aware of the warrant, she would have returned to Maui voluntarily. Though she conceded that she did not obey the court-ordered custody visitation schedule, Anzalone argued that her non-compliance did not illustrate that she would have also disobeyed a court order requiring her appearance in Maui, such that extradition was necessary. Anzalone explained that she did not disobey the custody visitation schedule without reason, or due to pure insubordination. Rather, she disclosed that she took her child and fled the state because she believed that Father has been, and would continue, abusing their son and subjecting him to neglect.

The family court orally denied Anzalone's DANC Motion, explaining that: "I do not think the ends of justice and the welfare of society dictate that she not suffer this penalty. I think it's exactly the opposite of that. This is not conduct we want to encourage." Accordingly, the family court sentenced Anzalone to four years of probation. Further, the family court ordered that Anzalone, inter alia, "pay restitution to the Clerk of the Court in the amount [of] $4,581.93 as a condition of probation and as a free standing order." The family court explained that it was ordering Anzalone to reimburse the State for extradition costs because: "There is no way I think the taxpayers of this county should be responsible for that bill

9

because the only reason it was set in motion was by the actions of Ms. Anzalone." As to the schedule of payment, Anzalone stated that she could pay $50 per month.

The family court filed its final judgment of conviction and probation sentence on October 28, 2015.

## B. ICA Proceedings

On appeal, Anzalone asserted, inter alia,[4] that the family court erred in ordering Anzalone to pay extradition costs as part of her sentence. Anzalone advanced two arguments in support of this point of error. First, Anzalone argued that because the State "did not reimburse anyone for losses arising from the result of a crime," the State was not a "victim" within

---

[4] Anzalone also argued that the family court abused its discretion in requiring her to seek mental health treatment as a condition of probation, because the family court's language in its written ruling could be read as giving "'medical' discretion to the probation officer," and because there were insufficient facts to support the imposition of such a condition. Moreover, she asserted that the family court abused its discretion in denying her DANC Motion because the family court focused on "the nature of the offense and her disobedience to the Family Court, rather than the characteristics of the defendant."

The ICA held that "there was sufficient factual basis in the record to justify the Family Court's imposition of mental health treatment as a condition of probation," but acknowledged that "the language of the condition as set forth in the written Judgment is ambiguous in that it could be read as giving the probation officer the authority to order medication and tests and to determine whether clinical discharge is appropriate." Accordingly, the ICA remanded the case so that "the Judgment can be clarified . . . to provide that while Anzalone shall, as directed by her probation officer, obtain and maintain mental health treatment or other mental health services, the determination of clinical discharge and the appropriate medication or tests shall be made by her treating mental health professional." On her other point of error, the ICA held that the family court "properly considered the nature and circumstances of Anzalone's offense" and did not abuse its discretion in denying her DANC Motion.

On certiorari, Anzalone has not presented any questions concerning the ICA's holdings on her other points of error. The State's response also does not raise any questions on these matters. Accordingly, we do not address them. See Hawai'i Rules of Appellate Procedure Rule 40.1(d).

the meaning of HRS § 706-646(1)(c).[5]  Accordingly, Anzalone asserted, the family court could not have ordered her to pay extradition costs as restitution to the State.

Second, Anzalone contended that the family court lacked the authority to require her to pay extradition costs because: (1) pursuant to HRS § 706-600,[6] criminal defendants can only be sentenced pursuant to HRS Chapter 706, and the family court's authority to order payment of extradition costs lies outside of this section; and (2) HRS § 621-9(b) did not apply because its plain language limits its scope to "situations where extradition is mandated by court order or bench warrant."

The State responded that its request for extradition costs pursuant to HRS § 621-9(b) was proper because the statute's plain language and legislative history supported that the legislature "intended to allow the State to recover extradition costs from nonindigent defendants in criminal cases." Accordingly, the State argued that because the underlying case was a criminal case, the family court had issued a warrant for Anzalone's arrest, the State certified the extradition costs, and the family court "was informed that Anzalone had housing and

---

[5]  Pursuant to HRS § 706-646(1)(c) (2014), the term "victim" could be used to refer to "[a] governmental entity that has reimbursed the victim for losses arising as a result of the crime or paid for medical care provided to the victim as a result of the crime[.]"

[6]  HRS § 706-600 (2014) states:  "No sentence shall be imposed otherwise than in accordance with this chapter."

financial resources to pay," the "statutory criteria for
imposition of extradition costs was met."

Furthermore, the State conceded that both the State and
the family court had "mislabeled" the payment of extradition
costs as "restitution," but maintained that "taken in context it
is clear that when the trial court granted the amount of
$4,581.93 requested by the State, it was granting extradition
costs." Thus, the State concluded that because the family court
could order "other fees" as a discretionary condition of
probation pursuant to HRS §§ 706-624(2)(q)[7] and 706-648(2),[8] the

---

[7]    HRS § 706-624(2)(q) (2014) provides:

> (2) Discretionary conditions. The court may provide,
> as further conditions of a sentence of probation, to
> the extent that the conditions are reasonably related
> to the factors set forth in section 706-606 and to the
> extent that the conditions involve only deprivations
> of liberty or property as are reasonably necessary for
> the purposes indicated in section 706-606(2), that the
> defendant:
>
>     . . . .
>
>     (q) Satisfy other reasonable conditions as the
>     court may impose.

[8]    HRS § 706-648(2) (2014) states:

> (2) The entire fee ordered or assessed shall be
> payable forthwith by cash, check, or by a credit card
> approved by the court. When a defendant is also
> ordered to pay a fine, make restitution, pay a crime
> victim compensation fee, or pay other fees in addition
> to the probation services fee under subsection (1),
> payments by the defendant shall be made in the
> following order of priority:
>     (a) Restitution;
>     (b) Crime victim compensation fee;
>     (c) Probation services fee;
>     (d) Other fees; and
>     (e) Fines.

12

family court possessed the statutory authority to order Anzalone to pay extradition costs.

In a summary disposition order filed on February 24, 2017, the ICA affirmed in large part the family court's judgment of conviction and probation sentence, holding that:

> We agree with the State that while the costs of Anzalone's extradition could not be imposed as restitution, the Family Court had the authority to impose extradition costs under HRS § 621-9(b). Anzalone was a defendant in a criminal case whose presence from outside the circuit was mandated by a bench warrant. The record shows that the Family Court was relying on HRS § 621-9(b) in imposing the extradition costs. We therefore affirm the Family Court's imposition of the costs of extradition as a condition of probation. However, because extradition costs could not be imposed as restitution under HRS § 706-646 (2014), the Family Court on remand shall modify the Judgment to reflect the imposition of $4,581.93 in extradition costs pursuant to HRS § 621-9(b), and not as restitution.

(Citations omitted.) On April 5, 2017, the ICA entered its judgment on appeal.

## II. STANDARD OF REVIEW

### A. Statutory Interpretation

"The proper interpretation of a statute is a question of law that is reviewed de novo under the right/wrong standard." State v. DeMello, 136 Hawaiʻi 193, 195, 361 P.3d 420, 422 (2015).

## III. DISCUSSION

On certiorari, Anzalone presents one question for our review: whether, after determining Anzalone could not be ordered to pay extradition costs as restitution, the ICA gravely erred by holding that the family court properly ordered Anzalone to pay

13

extradition costs as a condition of probation pursuant to HRS §
621-9(b).  Briefly stated, Anzalone argues that the ICA erred in
affirming the family court's order requiring her to pay
extradition costs because:  (1) based upon its plain language,
HRS § 621-9(b) does not apply to the present case, and (2) the
statutory requirements in HRS § 621-9(b) were not met.[9]  We
address each of Anzalone's arguments in turn below.

**A.   HRS § 621-9(b) applies in this case because the arrest
warrant constituted a "court order" mandating Anzalone's
appearance within the meaning of HRS § 621-9(b).**

Anzalone's first argument concerns whether HRS § 621-
9(b) applies in this case.  HRS § 621-9(b) (1993) states:

> Whenever the presence of a defendant in a criminal
> case or in a proceeding under chapter 704 or a
> petitioner in a post conviction proceeding who is
> outside the judicial circuit is mandated by court
> order or bench warrant to appear, the cost of airfare,
> ground transportation, any per diem for both the
> defendant or petitioner and sufficient law enforcement
> officers to effect the defendant's or petitioner's
> return, shall be borne by the State.  All such
> expenses shall be certified by the court or public
> prosecutor or the attorney general.  Duly certified
> claims for payment shall be paid upon vouchers
> approved by the state director of finance and warrants
> drawn by the state comptroller.  The court may order
> the nonindigent defendant or petitioner who was
> returned to the State of Hawaii to reimburse the State
> for the costs of such extradition or return as
> specifically described above.

(Emphases added.)

---

[9]     In addition to her statutory arguments, Anzalone also contends that her
sentence should be vacated because she was denied her right to procedural due
process.  She appears to argue that because the State initially framed its
request for reimbursement of extradition costs as "restitution," and served
the certification of costs on Anzalone shortly before the sentencing hearing,
she did not receive adequate notice and was not given a meaningful opportunity
to be heard.

        Because we vacate Anzalone's sentence on statutory grounds, see section
III infra, we do not address her due process arguments.

14

Anzalone argues that HRS § 621-9(b) does not apply to the present case because "there was no bench warrant or order mandating Petitioner to appear before the court." She contends that "an arrest warrant is to empower a law enforcement officer to arrest the identified party," such that "an arrest warrant is distinct from the order or bench warrant referenced in HRS § 621-9(b)." Anzalone appears to assert that HRS § 621-9(b) only applies when the defendant has already appeared before the court, such that "process has attached and the court has authority on a defendant's compliance," has been ordered to return, and has failed to comply. The State responds that "[i]n the underlying case, there was a warrant of arrest issued to arrest and bring Anzalone to appear in court." The State maintains that "[c]learly the warrant of arrest is a 'court order to appear' as specified in HRS § 621-9(b)."

We agree with the State that the arrest warrant in this case qualified as a "court order" mandating Anzalone's appearance under HRS § 621-9(b). The arrest warrant stated, in relevant part:

> This Court HAVING FOUND PROBABLE CAUSE to believe that the defendant has committed the offense(s) indicated below,
> YOU ARE HEREBY COMMANDED on the INFORMATION of DETECTIVE RONALD BENNETT, verified by oath or declaration, to arrest and bring the defendant to the Circuit Court of the Second Circuit, Hoapili Hale, 2145 Main Street, Wailuku, Maui, Hawaii, for Arraignment and Plea before the Honorable [Judge Richard T. Bissen, Jr.]

(Emphasis added.)

15

Here, the arrest warrant not only authorized law enforcement officers to arrest Anzalone, but also <u>commanded</u> the arresting officers to bring Anzalone before the family court to appear for her arraignment and plea.  Put differently, the arrest warrant was not just a document that empowered a law enforcement officer to arrest her, as Anzalone contends.  By contrast, the arrest warrant, as written in this case, effectively <u>mandated</u> a law enforcement officer to find Anzalone and bring her to appear before the family court for specific proceedings.  The arrest warrant also referred to itself as a "Court Order" when advising Anzalone of the consequences that could follow if she was released from custody, and failed to appear for all court proceedings in connection with the charges against her:

> DEFENDANT:  <u>If you are released from custody by this Court Order</u>, with or without bail, it is upon condition that you will subsequently appear in court for all proceedings in connection with the charge(s) in this case.  FAILURE TO APPEAR MAY SUBJECT YOU TO PROSECUTION FOR BAIL JUMPING, which can be a felony with a five-year term of incarceration.

(Emphasis added.)

Consequently, despite being labeled a "Warrant of Arrest," the arrest warrant in the present case was in form and in substance a court order that mandated Anzalone's appearance before the family court for her arraignment and plea.  As such, we hold that the arrest warrant in the present case constituted a "court order" that mandated her appearance before the court under HRS § 621-9(b), such that HRS § 621-9(b) applies in this case.

16

**B.    Because the statutory requirements under HRS § 621-9(b) were not met in the present case, the family court erred in granting the State's request for extradition costs.**

Second, Anzalone argues that assuming that HRS § 621-9(b) applies in this case, the State had to demonstrate that Anzalone was <u>not</u> indigent in connection with its request for reimbursement of extradition costs, and that the family court was obligated to find that she was nonindigent prior to ordering Anzalone to pay extradition costs.  She asserts that because neither the family court nor the State complied with the foregoing requirements, the family court erroneously ordered her to reimburse the State for extradition costs.  The State responds that Anzalone's argument fails because the evidence in the record sufficiently demonstrated that she was not indigent.

The parties' arguments require this court to resolve two issues of first impression:  (1) whether a court is required to make a finding concerning the defendant's indigency prior to ruling on a request by the State for reimbursement of extradition costs brought pursuant to HRS § 621-9(b), and (2) whether the State or the defendant should bear the burden of proof concerning whether the defendant is nonindigent for the purposes of HRS § 621-9(b).  We address each issue in turn.

**1.    Requisite Threshold Finding of Nonindigency**

With respect to the first issue, we hold that when faced with a request for reimbursement of extradition costs made

17

pursuant to HRS § 621-9(b), the reviewing court cannot order a criminal defendant to reimburse the State for the costs of his or her extradition unless the court has first found that the defendant is nonindigent.  Our holding is supported by the plain language of HRS § 621-9(b) and the statute's legislative history.

"The plain language of a statute is 'the fundamental starting point of statutory interpretation.'"  DeMello, 136 Hawaiʻi at 195, 361 P.3d at 422 (quoting State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009)).  "Courts are bound, if rational and practicable, to give effect to all parts of a statute and no clause, sentence or word shall be construed as superfluous, void or insignificant if construction can be legitimately found which will give force to and preserve all words of the statute."  Id. (quoting Dawes v. First Ins. Co. of Haw., Ltd., 77 Hawaiʻi 117, 135, 883 P.2d 38, 56 (1994)).

HRS § 621-9(b) states:  "The court may order the nonindigent defendant or petitioner who was returned to the State of Hawaii to reimburse the State for the costs of such extradition or return as specifically described above."  (Emphases added.)  Through the use of the word "may," the statute establishes that courts have the discretion to order a defendant to repay the State for the costs of his or her extradition.  However, by specifying that such orders can only be issued when a "nonindigent defendant or petitioner" is extradited, the text of

18

HRS § 621-9(b) establishes a statutory prerequisite that must be met in order for the court to exercise its discretion in the first place. Specifically, this language requires that the court first find that the defendant is nonindigent before evaluating the facts of the case to determine whether, in its discretion, the defendant should bear the costs of extradition.

The foregoing interpretation of HRS § 621-9(b) is also consistent with the statute's legislative history. When section (b) was first added to HRS § 621-9 in 1980, section (b) did not permit the State to be reimbursed for the costs of extradition. Instead, the statute mandated that the State bear the costs of extradition in all cases without exception. 1980 Haw. Sess. Laws Act 306, § 1 at 961; HRS § 621-9(b) (1984).

The legislature first amended HRS § 621-9(b) in 1987, adding the following sentence at the end of the subsection: "For post conviction proceedings only, and at the discretion and order of the court, the defendant or petitioner returned to the State of Hawaii shall reimburse the State for the costs of such extradition as specifically described above." 1987 Haw. Sess. Laws Act 85, § 1 at 142. The legislature clarified that "[t]he purpose of this bill is to amend Section 621-9, HRS, to provide that the costs of extradition be borne by the defendant or petitioner." H. Stand. Comm. Rep. No. 913, in 1987 House Journal, at 1535. However, the House stated:

19

> Your Committee further amended the bill to provide for the discretionary authority of the court in assessing such costs.  This amendment is in accord with the testimony presented by the Office of the Public Defender which indicated that the bill as heard, discriminated against indigent defendants. Such defendants, once transferred to the mainland, would effectively be prevented from pursuing post conviction relief.

H. Stand. Comm. Rep. No. 913, in 1987 House Journal, at 1535-36. In short, in 1987, the legislature first amended HRS § 621-9(b) to provide that post-conviction defendants could be required to reimburse the State for extradition costs.  Concerned with unfairly imposing a financial burden upon indigent defendants, the legislature provided courts with discretion in deciding whether extradition costs ought to be borne by defendants rather than the State.

HRS § 621-9(b) was further amended in 1988.  The legislature substantially revised the last sentence in HRS § 621-9(b) as follows, with deletions indicated in brackets and additions illustrated with underlines:  "[For post conviction proceedings only, and at the discretion and order of the] The court[,] may order the non-indigent defendant or petitioner who was returned to the State of Hawaii [shall] to reimburse the State for the costs of such extradition or return as specifically described above."  1988 Haw. Sess. Laws Act 280, § 1 at 524.  The legislature explained that "[t]he purpose of this bill is to allow the court to order persons extradited to Hawaii to pay the costs of the extradition unless the court finds that person

indigent." H. Stand. Comm. Rep. 1597-88, in 1988 House Journal, at 1394 (emphasis added). The legislature further acknowledged "that the costs of extraditions are significant." H. Stand. Comm. Rep. 1597-88, in 1988 House Journal, at 1394.

The 1988 amendments to HRS § 621-9(b) had three effects. First, the statute was expanded to permit the State to recover extradition costs from defendants in all criminal proceedings, rather than only post-conviction proceedings. Second, the legislature made clear that courts had discretion in determining whether to order defendants to bear the cost of their extradition. Third, the amendment and the legislature's accompanying comments in the House standing committee report collectively illustrate that the legislature intended to preclude courts from exercising such discretion upon finding that the defendant was indigent. Correspondingly, the legislature conditioned the court's ability to exercise its discretion upon its finding that the defendant is nonindigent.

In short, the legislative history of HRS § 621-9(b) illustrates that the legislature initially intended for the court's discretion to be the primary means of protecting indigent defendants from the undue financial burden of having to repay the State for extradition costs. Subsequently, the legislature incorporated an additional procedural safeguard that ensured indigent defendants would not be required to pay extradition

costs.  Specifically, the legislature intended that a court find that the defendant is nonindigent before ordering him or her to pay the substantial costs of extradition.

To conclude, the plain language of HRS § 621-9(b) and the statute's legislative history suggest that the court's ability to discretionarily order a defendant to pay extradition costs is conditioned upon its finding that the defendant is nonindigent.  Accordingly, we hold that courts must engage in a two-step inquiry when evaluating whether to grant the State's request for reimbursement of extradition costs by a criminal defendant under HRS § 621-9(b).  First, the court must ascertain whether the defendant is nonindigent.  Then, if the court finds that the defendant is nonindigent, the court must analyze the facts before it and determine whether, in its discretion, the defendant should be required to reimburse the State for extradition costs.

### 2.   Burden of Proving Indigency or Nonindigency

As courts are required to find that the defendant is nonindigent prior to ordering him or her to pay extradition costs, HRS § 621-9(b) places the burden of proof on the State to prove nonindigency in order for extradition costs to be imposed upon the defendant.

HRS § 621-9(b) does not define the term "nonindigent." However, with respect to analyzing a defendant's indigency in

other contexts, this court has held that a trial court should take into consideration: (1) the defendant's income (gross income minus withholding taxes, where applicable) from all sources; (2) the defendant's fixed monthly expenditures, "especially those which are reasonably necessary to provide him and his dependents with the necessities of life"; (3) the defendant's assets and investments; (4) the nature and extent of the defendant's fixed liabilities; (5) the defendant's borrowing capacity and the extent to which such borrowing would affect his or her fixed monthly obligations and his or her future financial situation; (6) in certain limited circumstances, the defendant's real property and personal property; and (7) other factors that may bear upon the defendant's indigency. State v. Mickle, 56 Haw. 23, 26-28, 525 P.2d 1108, 1111-12 (1974); see also State v. Phomphithack, CAAP-11-0000347 at 1 (App. June 21, 2013) (SDO) (noting that the Mickle factors are applicable and relevant to, though not necessarily dispositive of, whether a defendant is nonindigent under HRS § 621-9(b)).

In other words, the applicable inquiry governing a trial court's evaluation of a defendant's indigency depends in large part on the defendant's personal information. See Mickle, 56 Haw. at 26-28, 525 P.2d at 1111-12. Thus, the defendant, as opposed to the State, will readily have access to the information and records that the trial court will require to determine

23

whether he or she is a nonindigent defendant within the meaning of HRS § 621-9(b).

Accordingly, we hold that when the State makes a request for reimbursement of extradition costs pursuant to HRS § 621-9(b), the defendant bears the initial burden of producing evidence showing the existence of fact(s) that he or she is indigent.  Such facts may be evident in the record, for example, because the defendant has appointed counsel or by circumstances presented in the presentence report.  Once the trial court determines that the defendant produced evidence of indigency, the burden of persuasion rests upon the State to demonstrate that the defendant is, in fact, nonindigent.  If the State satisfies its burden of persuasion, the trial court may discretionarily order the defendant to reimburse the State for the costs of his or her extradition.

3.    **Application of the Aforementioned Principles to the Facts in the Present Case**

Applying the foregoing principles to the present case, we conclude that the family court erred in ordering Anzalone to pay extradition costs under HRS § 621-9(b) for two reasons.

First, the family court did not ascertain whether Anzalone was nonindigent prior to ordering her to reimburse the State for extradition costs.  Here, the family court ordered Anzalone to pay extradition costs having determined that it would

be unfair for "the taxpayers of [the County of Maui to] be responsible for that bill because the only reason it was set in motion was by the actions of Ms. Anzalone." Prior to issuing this order, however, the family court did not enter any findings with regard to whether Anzalone was nonindigent. In doing so, the family court improperly skipped the first step of the two-step analytical framework that governs the evaluation of a request by the State for reimbursement of extradition costs from a criminal defendant. Consequently, the family court erred in ordering Anzalone to reimburse the State for extradition costs.

Second, Anzalone should not have been ordered to reimburse the State for extradition costs because the evidence in the record does not adequately support that Anzalone was a nonindigent defendant within the meaning of HRS § 621-9(b). Though neither she nor the State proffered any evidence at the sentencing hearing to explicitly address whether she was nonindigent, the State contends that there was sufficient evidence in the record to support that Anzalone was nonindigent because she indicated that, as of sentencing, she "had a full-time job and housing" and that "[s]he could pay $50.00 a month toward the financial obligations of her probation."

The State's argument is unpersuasive. Anzalone's assertions at the sentencing hearing alone are not sufficient to demonstrate that, at the time she was being sentenced, she was

25

nonindigent.  Indeed, Anzalone indicated that she "has a full-time job now at a hat store," that she was "still looking for . . . more permanent housing," and that she could afford to pay $50 per month to the monetary conditions of her probation as sentenced.  However, without more information concerning Anzalone's financial circumstances, such as the amount of income she earned from her job, her other sources of income and financial support (if any), and her requisite expenses (e.g. housing and child-care), it is still substantially uncertain whether, at the time of sentencing, Anzalone was nonindigent under HRS § 621-9(b).

Furthermore, the State's argument is unavailing because there is evidence in the record indicating that, notwithstanding the fact that Anzalone may have secured a job at a hat store, Anzalone could still have been considered indigent at the time of sentencing.  At all stages of the proceedings, Anzalone was represented by court-appointed counsel.  Moreover, at the sentencing hearing, Anzalone indicated that she had yet to secure permanent housing, and was still living at a shelter.  While these facts are not dispositive of her indigency, they are nonetheless supportive thereof.

To conclude, when determining whether to impose extradition costs upon a criminal defendant pursuant to HRS § 621-9(b), the trial court must first analyze whether the

26

defendant is nonindigent. The defendant bears the burden of showing facts that support that he or she is indigent. Upon satisfaction of this initial burden, the burden of persuasion rests upon the State to demonstrate that the defendant is in fact nonindigent. Ultimately, if the court finds that the defendant is nonindigent, then the court must ascertain whether, in its discretion, the defendant should be ordered to bear the costs of his or her extradition.

In this case, the family court did not determine whether Anzalone was nonindigent prior to imposing extradition costs upon her. Additionally, the evidence in the record did not sufficiently demonstrate that Anzalone was nonindigent at the time of sentencing. Therefore, the family court improperly ordered Anzalone to pay extradition costs under HRS § 621-9(b).

**C.     The ICA erred in effectively imposing, on its own and in an appeal, extradition costs as a condition of probation.**

Because the family court erred in ordering Anzalone to reimburse the State for the costs of her extradition, section III.B, supra, it follows that the ICA erred in "affirm[ing] the Family Court's imposition of the costs of extradition as a condition of probation."

Moreover, we hold that the ICA further erred by mandating the family court to, on remand, "modify the Judgment to reflect the imposition of $4,581.93 in extradition costs pursuant

27

to HRS § 621-9(b), and not as restitution." Although the ICA acknowledged that the family court may have erred in imposing extradition costs as restitution, the ICA determined that the family court had the authority to impose such costs pursuant to HRS § 621-9(b). Then, the ICA ordered the family court to sentence Anzalone to pay extradition costs as a condition of probation pursuant to HRS §§ 621-9(b) and 706-624(q) (2014). In our view, the ICA erred in taking this action, as it improperly intruded on the province of the family court to order a defendant to pay extradition costs, and to determine the conditions of a convicted defendant's probation.

This court has consistently recognized that trial courts, as sentencing courts, have "wide discretion, based on [their] assessment of the character and circumstances of a convicted defendant, in deciding whether to grant probation and in imposing conditions to probation." State v. Martinez, 59 Haw. 366, 372, 580 P.2d 1282, 1286 (1978); State v. Solomon, 107 Hawaiʻi 117, 129, 111 P.3d 12, 24 (2005) (recognizing that in addition to the mandatory conditions of probation set forth in HRS § 706-624, sentencing courts may also, in their discretion, impose additional conditions that are reasonable). When a defendant challenges a sentencing court's decision regarding the terms and conditions of his or her probation on appeal, the appellate court's inquiry is limited to reviewing the sentencing

28

court's decision for an abuse of discretion. State v. Sacoco, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961) ("It is a universally accepted aphorism in appellate jurisprudence that a discretion vested in a trial court and exercised by it will not be disturbed unless it affirmatively appears that there has been a plain abuse of such discretion."); see also, State v. Huggett, 55 Haw. 632, 635, 525 P.2d 1119, 1122 (1974) (cautioning that "[t]he only question before this court on review" of whether the sentencing court properly granted, revoked, or modified a convicted defendant's probation sentence "is whether or not there has been an abuse of that judicial discretion").

Here, the ICA apparently concluded that the family court abused its discretion by imposing extradition costs as restitution because the ICA "agree[d] with the State that . . . the costs of Anzalone's extradition could not be imposed as restitution[.]" But, the ICA then took its holding a step further. Acknowledging that the family court could have imposed extradition costs under HRS § 621-9(b), the ICA ordered the family court to "modify the Judgment to reflect the imposition of $4,581.93 in extradition costs pursuant to HRS § 621-9(b), and not as restitution." In so holding, the ICA effectively acted as a sentencing court. Acting through the family court on remand, the ICA itself sentenced Anzalone to pay extradition costs as a condition of probation pursuant to HRS §§ 621-9(b) and 706-

29

624(2)(q) (2014).  However, the discretionary authority to require a criminal defendant to pay extradition costs under HRS § 621-9(b), and the discretionary authority to impose additional conditions of probation pursuant to HRS § 706-624(2)(q) (2014), both lie with the trial court, not an appellate court. Therefore, the ICA erred to the extent that rather than reviewing the family court's sentencing decisions for an abuse of discretion, the ICA mandated the family court to exercise its discretionary sentencing authority in a specific manner on remand.

## IV.   CONCLUSION

For the reasons stated above, we vacate the ICA's April 5, 2017 judgment on appeal, vacate Anzalone's sentence in its entirety, and remand the case for sentencing anew.

|  |  |
|---|---|
| | /s/ Mark E. Recktenwald |
| Matthew S. Kohm for petitioner | /s/ Paula A. Nakayama |
| Annalisa M. Bernard and Renee Ishikawa Delizo for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

