FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000577
30-OCT-2020
07:58 AM
Dkt. 60 OP

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellee, v.
DESMOND C.K. PULGADOS, Defendant-Appellant

NO. CAAP-19-0000577

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NOS. 2PC-16-1001012, 2CPC-17-0000224,
2CPC-17-0000227, 2CPC-17-0000291, 2CPC-17-0000416,
2CPC-17-0000610, and 2CPC-18-0000179)

OCTOBER 30, 2020

GINOZA, CHIEF JUDGE, LEONARD AND HIRAOKA, JJ.

OPINION OF THE COURT BY LEONARD, J.

Hawai'i law provides that convicted criminal defendants must pay certain fees, including a crime victim compensation (**CVC**) fee and internet crimes against children (**ICAC**) fee, which help provide funding for certain criminal justice programs. See generally Hawaii Revised Statutes (**HRS**) chapters 351 (Crime Victim Compensation Act) and 846F (Internet Crimes Against Children Act, also known as Alicia's Law). However, the

pertinent statutes also provide, in varying terms, that these fees should not be ordered or should be waived if the defendant is unable to pay the fee.  We analyze the language of these statutes and their application to the appellant, in light of the evidence in the record as to his financial circumstances, and we conclude that the trial court erred in imposing CVC fees and ICAC fees in this case.

Defendant-Appellant Desmond C.K. Pulgados (**Pulgados**) appeals from the September 9, 2019 Amended Judgment of Conviction and Sentence (**Amended Judgment**) and challenges the July 16, 2019 Findings of Fact and Conclusions of Law; Order Denying Defendant's Motion to Waive Court Fees and Motion to Reconsider Sentence (**Order Denying Motion to Waive**), which were entered by the Circuit Court of the Second Circuit (**Circuit Court**).[1]

I.    BACKGROUND FACTS

Between December 2016 and March 2018, Pulgados was charged in six Felony Information and Non-Felony Complaints and one Indictment with 50 counts of, *inter alia*, credit card theft and fraud, forgery and identity theft, unauthorized property and vehicle entry, and various prohibited acts relating to drug paraphernalia and promotion.

On November 23, 2018, the State of Hawaiʻi (the **State**) and Pulgados reached a plea agreement under which Pulgados pleaded no contest to the following sixteen charges:  Count 1 (Unauthorized Control of a Propelled Vehicle), Count 4 (Theft of

---

[1]    The Honorable Rhonda I.L. Loo presided.

2

Credit Card), and Count 9 (Promoting a Dangerous Drug in the Third Degree) in Case 2PC161001012; Count 2 (Theft of Credit Card) and Count 3 (Fraudulent Use of Credit Card) in Case 2CPC-17-0000224; Count 1 (Theft of Credit Card) and Count 2 (Fraudulent Use of Credit Card) in Case 2CPC-17-0000227; Count 1 (Unauthorized Control of a Propelled Vehicle) in Case 2CPC-17-0000291; Count 2 (Promoting a Dangerous Drug in the Second Degree) and Count 3 (Prohibited Acts Relating to Drug Paraphernalia) in Case 2CPC-17-0000416; Count 2 (Unauthorized Entry into Motor Vehicle in the First Degree) and Count 3 (Theft of Credit Card) in Case 2CPC-17-0000610; and Count 1 (Theft in the Second Degree), Count 2 (Theft of Credit Card), Count 3 (Theft of Credit Card), and Count 4 (Theft of Credit Card) in Case 2CPC-18-0000179.

At a March 20, 2019 sentencing hearing, the Circuit Court accepted Pulgados's no contest pleas and entered a Judgment; Conviction and Sentence; Notice of Entry (**Judgment**), convicting Pulgados and sentencing him to an indeterminate sentence, with a maximum term of ten years on the Class B felony count, to run concurrently with the sentences for the Class C felony and misdemeanor counts, which have maximum terms of five years and one year, respectively, as well as a fine for the drug paraphernalia count.[2] In the March 20, 2019 Judgment, the Circuit Court ordered Pulgados to pay: (1) CVC fees totaling $1,575.00 on fifteen counts; (2) ICAC fees totaling $1,500.00 on

_____

[2] While the Circuit Court accepted Pulgados's no contest pleas, the court did not adopt the parties' sentencing recommendation of "probation with eighteen months jail and entry into the Maui Drug Court Program."

fifteen counts; (3) restitution in the amounts of $696.00 for Case No. 2PC161001012 and $210.99 for Case No. 2CPC-17-0000224; and (4) a court fine of $500.00 for Count 3 in Case No. 2CPC-17-0000416.[3] At the sentencing hearing, the Circuit Court denied Pulgados's request that he be found indigent and that any fees be waived, but granted his request to hold a hearing to further examine whether a waiver was warranted.[4] The court ordered payment of at least 25 percent of Pulgados's gross earnings while incarcerated, with payment thereafter at the rate of at least $30 per month, and with the $906.99 in restitution payable first.

On March 22, 2019, Pulgados filed a Motion to Waive Court Fees. Pulgados argued, *inter alia*, that the fees "can only be imposed upon convicted defendants who can afford to pay them" and that, because Pulgados could not afford to pay them, the fees had to be waived. Pulgados further contended that there was a "presumption of indigency" based on his qualification for representation by the Office of the Public Defender. Pulgados argued that the presumption persisted through sentencing and that, here, it was not rebutted by the State. In addition, Pulgados argued that even if he is not found indigent, the CVC

---

[3] These figures reflect the amounts contained in the March 20, 2019 Judgment. Subsequently, the court struck one Class C felony conviction upon finding that the State did not have probable cause to support the charge. Accordingly, the Amended Judgment of September 9, 2019, reflects a corresponding reduction of $105.00 in CVC fees and $100.00 in ICAC fees so that the fee amounts at issue on appeal are $1,470.00 and $1,400.00, respectively.

[4] When prompted for a response to Pulgados's waiver request, the State deferred to the court.

and ICAC fees are unconstitutional as "[t]hey are not fees at all, but taxes unconstitutionally delegated to the Judiciary."[5]

At a June 3, 2019 evidentiary hearing on the Motion to Waive Court Fees, Pulgados argued that he could not afford to pay the CVC or ICAC fees.[6]  Pulgados testified that he had no income, no savings, no checking account, no real property, no stocks, no bonds, nor any other assets of any kind.  Pulgados testified that he had no expenses, was living at Halawa Correctional Facility, and had been incarcerated there for two years at that point, and that he had not held a job in at least four years.  Pulgados also testified that his last job was as a shuttle driver, but he did not have a driver's license as of the hearing.

When cross-examined about his ability to find employment upon his eventual release from prison, Pulgados testified that he could read and write English, completed the eleventh grade, and has a GED.[7]  Pulgados also testified that he has "disability problems" relating to "ankle surgeries and back surgery" which took place in 2016.  In response to the State's inquiry as to whether "there is any reason why you [Pulgados]

---

[5]     Pulgados also argued that the fees constitute "an 'excessive fine' in violation of the Hawaiʻi constitution and the Eighth Amendment to the United States Constitution."  However, this issue is not raised on appeal.

[6]     Pulgados also asked the court to reconsider the ten-year prison sentence.  The Circuit Court denied that request, and the issue is not raised on appeal.

[7]     A GED refers to having passed a General Educational Development test, which is a high school equivalency test.  The Hawaiʻi State Department of Education states that "[t]he GED test provides a valid means of measuring the educational achievement of adults who have not graduated high school and of comparing their academic competence with that of high school graduates."  *Adult Education*, Haw. State Dep't of Educ., http://www.hawaiipublicschools.org/TeachingAndLearning/AdultEducation/Pages/Home.aspx (last visited Sept. 14, 2020).

wouldn't be able to get a job after you're released from prison", Pulgados stated that his ankle injury is "pretty serious" and causes him "to be like limited, like immobile." When asked about how the back surgery affects him, Pulgados stated that he cannot stand for very long or do heavy lifting, but that he would be able to work while sitting, and, upon inquiry, he confirmed that he had never filed any type of disability claim.

Pulgados acknowledged that not all jobs would require standing, but claimed that he would not be able to return to work as a shuttle driver due to the injuries to his ankle. When further questioned about whether he would seek employment upon his release, Pulgados stated that it is "hard for a convict or a felon to get a job." However, he said that he is planning to try to find work when he gets out of prison and, if he could get a job, he might be able to pay $30 per month. Pulgados was 36 years old as of the June 3, 2019 hearing.

On July 16, 2019, the Circuit Court entered the Order Denying Motion to Waive. The court found and concluded that "though Defendant has some medical issues, he is otherwise healthy, young, able-bodied, educated, and willing and able to find employment after release from custody." In addition, the court found that Pulgados "has the ability to become employed in the future; and, when he becomes employed, the minimum payment of $30.00 per month would be feasible." The Circuit Court therefore concluded that Pulgados "is willing and will eventually be able to pay the fees pursuant to HRS § 706-605(6)." In response to Pulgados's argument that the fees levied on him are

unconstitutional delegations of the taxing power, the Circuit Court concluded that the statutes providing for the ICAC and CVC fees are constitutional and further concluded that Pulgados had not "satisfied his burden that no set of circumstances exists under which HRS §§ 351 and 846F would be valid."  On August 15, 2019, Pulgados filed a notice of appeal.

On September 9, 2019, the Circuit Court entered the Amended Judgment, which convicted and found Pulgados guilty of fifteen charges, which were the same as the charges set forth in the March 20, 2019 Judgment, except that the Amended Judgment did not include a conviction for Count 1 (Theft in the Second Degree) in Case 2CPC-18-0000179.  Therefore, there was no sentence of imprisonment, no CVC fees, and no ICAC fees related to that charge, and the total CVC fees levied against Pulgados were reduced (by $105.00) to $1,470.00 and the total ICAC fees were reduced (by $100.00) to $1,400.00.  Like the Judgment, the Amended Judgment included a fine of $500.00 and restitution payments totaling $906.99.  On September 25, 2019, Pulgados filed an amended notice of appeal.

## II.  POINTS OF ERROR

Pulgados asserts two points of error, contending that the Circuit Court erred:  (1) in finding and concluding that Pulgados is able to pay the CVC fees and ICAC fees totaling $2,870.00, on top of restitution in the amount of $906.99 and a fine of $500.00; Pulgados points to Findings of Fact (**FOFs**) 13 and Conclusions of Law (**COLs**) 6, 32, and 33 in his first point of error; and (2) when it levied $2,870.00 in fees from Pulgados

pursuant to an unconstitutional delegation of the Legislature's taxing power and applied the wrong test in determining when charges are taxes or fees; Pulgados points to COLs 13-16, 18, and 20-21 in his second point of error.

III. APPLICABLE STANDARDS OF REVIEW

We review the Circuit Court's findings of fact under the clearly erroneous standard. See, e.g., Peak Capital Grp. v. Perez, 141 Hawaiʻi 160, 172, 407 P.3d 116, 128 (2017) (citation and internal quotation marks omitted). "A finding of fact is clearly erroneous when 'the record lacks substantial evidence to support the finding,' or 'despite evidence to support the finding, the appellate court is left with a definite and firm conviction . . . that a mistake has been committed.'" Id. (quoting Beneficial Haw., Inc. v. Kida, 96 Hawaiʻi 289, 305, 30 P.3d 895, 911 (2001)). The Circuit Court's COLs, including with regards to questions of statutory interpretation and constitutional law, are reviewed de novo, under the right/wrong standard. State v. Rauch, 94 Hawaiʻi 315, 323, 13 P.3d 324, 332 (2000); Hawaii Nat'l Bank v. Cook, 100 Hawaiʻi 2, 7, 58 P.3d 60, 65 (2002). "[T]he right/wrong standard . . . allows the appellate court to examine the facts and answer the question without being required to give any weight to the trial court's answer to it." State v. Russo, 141 Hawaiʻi 181, 189, 407 P.3d 137, 145 (2017) (citation and internal quotation marks omitted). "A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." Dan v. State, 76 Hawaiʻi

423, 428, 879 P.2d 528, 533 (1994) (citation and internal quotation marks omitted).

"A judge has broad discretion in matters related to sentencing." State v. Phillips, 138 Hawaiʻi 321, 357, 382 P.3d 133, 169 (2016) (citation omitted).  Accordingly, a trial court's sentencing or resentencing determination will not be disturbed absent a "plain and manifest abuse of discretion in its decision." Rauch, 94 Hawaiʻi at 322, 13 P.3d at 331 (citations omitted).  "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Yamada, 108 Hawaiʻi 474, 478, 122 P.3d 254, 258 (2005) (citation omitted).

IV.  DISCUSSION

A.    Denial of Pulgados's Request to Waive Fees

Pulgados argues that the Circuit Court erred in finding and concluding that he is able to pay the CVC and ICAC fees, and in relying on his highly speculative future earning capacity in denying his motion to waive fees.  Pulgados contends that the court's conclusion that he can pay $2,870.00 in fees, on top of $1,406.99 for the restitution and fine, is not supported by the evidence and that the court was obligated to waive the fees, regardless of his potential to become employed upon release from prison at an uncertain point in the future, because he is clearly indigent.

This requires us to examine the statutes directing the imposition of the subject fees.  "The plain language of a statute

9

is 'the fundamental starting point of statutory interpretation.'" State v. DeMello, 136 Hawaiʻi 193, 195, 361 P.3d 420, 422 (2015) (quoting State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009)). "Where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." Blaisdell v. Dep't of Pub. Safety, 113 Hawaiʻi 315, 318-19, 151 P.3d 796, 799-800 (2007) (citation, internal brackets, and internal quotation marks omitted). "Where a statute is susceptible to more than one interpretation, the court will look to the intent of the legislature." State v. Johnson, 68 Haw. 292, 296, 711 P.2d 1295, 1298 (1985) (citation omitted).

   1. HRS § 846F-3(a) (2014 & Supp. 2018)

   Pulgados was ordered to pay ICAC fees of $1,400.00, which was $100.00 for each of his fourteen felony and misdemeanor convictions,[8] pursuant to HRS § 846F-3, which provides:

> **§ 846F-3  Internet crimes against children fee.**  (a) The court shall order every defendant to pay an internet crimes against children fee of up to $100 for each felony or misdemeanor conviction; provided that no fee shall be ordered when the court determines that the defendant is unable to pay the fee.
>
>  (b)  When a defendant is also ordered to pay a fine, make restitution, pay a crime victim compensation fee, or pay other fees in addition to the internet crimes against children fee, payments by the defendant shall be made in the order of priority established under section 706-651.
>
>  (c)  The defendant shall pay the internet crimes against children fee to the clerk of the court. The fee shall be deposited with the director of finance who shall transmit the fee to the internet crimes against children special fund pursuant to section 846F-4.

(Emphasis added).

---

 [8] Pulgados's fifteenth conviction was a violation, which is not subject to either ICAC or CVC fees. As discussed in n.3 above, although Pulgados was initially convicted of sixteen charges, the conviction on one charge was struck by the Circuit Court, and the Amended Judgment included convictions on only fifteen charges.

HRS § 846F-3(a) plainly and unambiguously states that "no fee shall be ordered when the court determines that the defendant is unable to pay the fee." The statute is written in the present tense, using mandatory language, and does not contain any language suggesting that a sentencing court has the discretion to order payment of ICAC fees even when a defendant is found to be unable to pay the fee at the time of sentencing. Upon review, nothing in the legislative history of HRS § 846F-3 evinces an intent for it to be read in any way other than its plain and obvious meaning. See S.B. 702, S.D. 2, H.D. 2, C.D. 1, 27th Leg., Reg. Sess. (2014); S. Stand. Comm. Rep. No. 2818, in 2014 Senate Journal, at 1134; S. Stand. Comm. Rep. No. 388, in 2013 Senate Journal, at 1047; H. Stand. Comm. Rep. No. 956-14, in 2014 House Journal, at 1217-18; H. Stand. Comm. Rep. No. 1104-14, in 2014 House Journal, at 1269; H. Stand. Comm. Rep. No. 1548-14, in 2014 House Journal, at 1414; Conf. Comm. Rep. No. 88-14, in 2014 House Journal, at 1508, 2014 Senate Journal, at 726.

Although HRS § 846F-3(a) itself does not define "unable to pay," it is well-established that indigency is the condition of being unable to pay. See generally Gideon v. Wainwright, 372 U.S. 335 (1963) (using indigency interchangeably with terms such as in forma pauperis, without funds, poor); Arnold v. Higa, 61 Haw. 203, 600 P.2d 1383 (1979) (using indigent and unable to pay interchangeably). In evaluating whether a criminal defendant is indigent or nonindigent, in the contexts of obtaining appointed counsel and paying extradition costs, the Hawaiʻi Supreme Court

has set forth several factors that a trial court ought to consider:

> (1) the defendant's income (gross income minus withholding taxes, where applicable) from all sources; (2) the defendant's fixed monthly expenditures, "especially those which are reasonably necessary to provide him and his dependents with the necessities of life"; (3) the defendant's assets and investments; (4) the nature and extent of the defendant's fixed liabilities; (5) the defendant's borrowing capacity and the extent to which such borrowing would affect his or her fixed monthly obligations and his or her future financial situation; (6) in certain limited circumstances, the defendant's real property and personal property; and (7) other factors that may bear upon the defendant's indigency.

State v. Anzalone, 141 Hawaiʻi 445, 455-56, 412 P.3d 951, 961-62 (2018) (citing, *inter alia*, State v. Mickle, 56 Haw. 23, 26-28, 525 P.2d 1108, 1111-12 (1974) (examining indigency in the context of eligibility for appointment of counsel)). "[O]ther factors" include whether the defendant has been represented by appointed counsel throughout the proceedings and whether the defendant has secured permanent housing. See id. at 456-57, 412 P.3d at 962-63.

In Anzalone, the defendant indicated at sentencing that she had secured employment at a hat store and could afford the $50.00 monthly payments for reimbursement of extradition costs assessed in her sentence. Id. at 456, 412 P.3d at 962. The Hawaiʻi Supreme Court nevertheless held that the record did not contain sufficient evidence to support a finding that the defendant was nonindigent. Id. Instead, the Anzalone court found that, despite the defendant's assertion at sentencing, there was no evidence presented, by either the defendant or the State, of the defendant's "financial circumstances" to "explicitly address whether she was nonindigent[.]" Id. The

12

supreme court observed that such evidence could have included the amount of income earned from the job, "other sources of income and financial support (if any)" and "requisite expenses (e.g. housing and child-care)." Id. The supreme court concluded that "notwithstanding the fact that Anzalone may have secured a job at a hat store, Anzalone could still have been considered indigent at the time of sentencing" as she was represented by appointed counsel throughout the proceedings, had yet to secure permanent housing, and was still living at a shelter. Id. at 457, 412 P.3d at 963. The court thus determined that the evidence in the record was insufficient to demonstrate that the defendant was nonindigent at the time of sentencing. Id.[9]

Here, the Circuit Court conducted an evidentiary hearing on Pulgados's assertion of indigency and based on his indigency, his request for a waiver of the ICAC fees assessed pursuant to HRS § 846F-3(a). Pulgados testified under oath at the hearing and presented no other witnesses. The State offered no witnesses and no evidence of any kind. Pulgados testified, *inter alia*, that his address was at the Halawa Correctional Facility, that he was unemployed, he was last employed in 2014, he had no income, no driver's license, no spouse, no savings account, no checking account, no home, no investments, no real estate, and no stocks/bonds/funds or other assets of any kind.

---

[9] In an earlier, unpublished decision, this court similarly held that a trial court's reliance on the earnings that a defendant could earn in prison constituted "an insufficient basis on which to find [the defendant] nonindigent" for the purpose of assessing extradition costs. State v. Phomphithack, CAAP-11-0000347, 2013 WL 3156024, *1 (Haw. App. June 21, 2013) (SDO) (citing Blaisdell, 113 Hawaiʻi at 319, 151 P.3d at 800 (defendant's demonstrable prison income was insufficient, absent evidence of other income, to deny *in forma pauperis* status regarding filing fees)).

He also had no expenses or debts, except for the restitution and fine. There was no evidence of any kind regarding actual or potential prison income; as Pulgados had already been in prison for two years and his unchallenged testimony was that he had no current income, the record contains no evidentiary support for "prison income" as a source from which Pulgados could begin paying restitution, the ICAC and CVC fees, and the fine. The record reflects that Pulgados was represented by the Office of the Public Defender throughout these proceedings and that he would be incarcerated for an indeterminate period of up to ten years.

The Circuit Court did not specifically determine whether Pulgados was unable to pay the ICAC fees at the time of sentencing, instead concluding that he "will eventually be able to pay the fees." We conclude that, with respect to the ICAC fees levied pursuant to HRS § 846F-3(a), the Circuit Court erred for two reasons. First, the Circuit Court did not make a ruling on whether Pulgados was unable to pay the ICAC fees at the time of sentencing, the determination that is plainly required pursuant to this statute. There is virtually no evidence in the record that Pulgados was able to pay the ICAC fees at the time of sentencing; there is overwhelming evidence in the record that Pulgados was unable to pay the ICAC fees at the time of sentencing. Second, even if the Circuit Court could have properly considered evidence of Pulgados's future earnings in its imposition of ICAC fees pursuant to HRS § 846F-3(a), the evidence as to Pulgados's age, his attainment of a GED, and his physical

ability to engage in some form of work at some point in the future was insufficient to demonstrate that he would not remain indigent and unable to pay the ICAC fees. While Pulgados testified as to his willingness to work after prison, any finding or conclusion that he would in fact find sufficient work to support himself was purely speculative.

For these reasons, we conclude that the Circuit Court erred in failing to determine that Pulgados was unable to pay the ICAC fees imposed on him pursuant to HRS § 846F-3(a). Accordingly, the Circuit Court erred in imposing the ICAC fees and denying Pulgados's request to waive the ICAC fees.

> 2. HRS §§ 706-605(6) (2014 & Supp. 2018) and 351-62.6(a) (2015)

Pulgados was also ordered to pay CVC fees of $1,470.00, which included varying amounts (ranging from $55.00 to $205.00) for each of his fourteen felony and misdemeanor convictions, pursuant to HRS §§ 706-605(6) & 351-62.6(a). HRS § 706-605 sets forth the statutorily authorized dispositions of convicted defendants in Hawai'i. HRS § 706-605(6) provides for a CVC fee, as follows:

> (6) The court shall impose a compensation fee upon every person convicted of a criminal offense pursuant to section 351-62.6; provided that the court shall waive the imposition of a compensation fee if it finds that the defendant is unable to pay the compensation fee. When a defendant is ordered to make payments in addition to the compensation fee, payments by the defendant shall be made in the order of priority established in section 706-651.

(Emphasis added).

HRS § 351-62.6 provides:

> **§ 351-62.6 Compensation fee.** (a) The court shall impose a compensation fee upon every defendant who has been convicted or who has entered a plea under section 853-1 and who is or will be able to pay the compensation fee. The

15

amount of the compensation fee shall be commensurate with the seriousness of the offense as follows:

    (1) Not less than $105 nor more than $505 for a felony;

    (2) $55 for a misdemeanor; and

    (3) $30 for a petty misdemeanor.

The compensation fee shall be separate from any fine that may be imposed under section 706-640 and shall be in addition to any other disposition under this chapter; <u>provided that the court shall waive the imposition of a compensation fee if the defendant is unable to pay the compensation fee</u>.  Moneys from the compensation fees shall be deposited into the crime victim compensation special fund under section 351-62.5.

  (b) The criteria of section 706-641 may apply to this section.  In setting the amount of the compensation fee to be imposed, the court shall consider all relevant factors, including but not limited to:

    (1) The seriousness of the offense;

    (2) The circumstances of the commission of the offense;

    (3) The economic gain, if any, realized by the defendant;

    (4) The number of victims; and

    (5) <u>The defendant's earning capacity, including future earning capacity</u>.

  (c) The compensation fee shall be considered a civil judgment.

(Emphasis added).

Accordingly, HRS § 706-605(6) requires the imposition of a CVC fee on every person convicted of a criminal offense <u>pursuant to HRS § 351-62.6</u>, *except* in instances where the court finds that the defendant is unable to pay, in which case the court is *required* to waive the fee.  Thusly, the statutory scheme for the imposition of CVC fees laid out in HRS § 351-62.6 is expressly incorporated into HRS § 706-605(6).  In any case, statutes governing the same subject, in this case CVC fees, must be interpreted with reference to each other.  <u>See</u>, <u>e.g.</u>, HRS § 1-16 (2009);[10] <u>Waters v. Nago</u>, 148 Hawaiʻi 46, 61, 468 P.3d 60, 75

---

[10] HRS § 1-16 provides:

  **§ 1-16  Laws in pari materia**.  Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.  What is clear in one statute may be called in aid to explain what is doubtful in another.

(2019) (statutory language must be read in the context of the entire statutory scheme and must be construed consistent with the purpose of the statute); Halstead v. Pratt, 14 Haw. 38, 39 (1902) ("The general rule is that a statute should be construed with reference to the system of laws of which it is a part, unless a contrary intention clearly appears."). Therefore, we must construe the "unable to pay" language in HRS § 706-605(6) in light of the language in HRS § 351-62.6 that states the Legislature's express intent to impose a CVC fine on a convicted defendant who "will be able to pay," even if the defendant is unable to pay at the time of sentencing.[11]

Although both HRS § 351-62.6(a) and HRS § 706-605(6) were enacted in the same legislative act in 1998, there is no legislative history explaining the apparent inconsistency between the provisions. See S.B. 2966, 19th Leg., Reg. Sess., 1998 Haw. Sess. Laws Act 206, §§ 2 and 4 at 717-20. There is also no explanation in the legislative history for why HRS § 351-62.6(a) contains both "is or will be able to pay" and "is unable to pay." The references to the imposition of fees in the committee reports are also in the present, "is unable to pay," language. See H. Stand. Comm. Rep. No. 894-98, in 1998 House Journal, at 1404; Conf. Comm. Rep. No. 123, in 1998 House Journal, at 1003, 1998 Senate Journal, at 796-97; Conf. Comm. Rep. No. 156, in 1998 House Journal, at 1025-26, 1998 Senate Journal, at 819. However, HRS § 351-62.6(b) also allows the sentencing court to consider

---

[11] In contrast, we note that HRS § 846F-3 is not described or otherwise incorporated into the "[a]uthorized disposition of convicted defendants" provisions set forth in HRS § 706-605.

17

the criteria for imposing fines under HRS § 706-641 (2014)[12] which contains the same "is or will be able to pay" language as HRS § 351-62.6(a), and directs the sentencing court to consider, *inter alia*, the defendant's future earning capacity.

Based on the above, we conclude that a sentencing court must impose CVC fees upon the satisfaction of two conditions: (1) that the defendant has been convicted of a criminal offense, including a conviction upon a plea; and (2) a determination that the defendant is or will be able to pay the CVC fee. If it is determined that the defendant is unable to pay the CVC fee, then the sentencing court must waive the imposition of the CVC fee as stated in HRS § 351-62(a), as well as HRS § 706-605(6).[13]

Obviously, Pulgados has been convicted of multiple criminal offenses and the Circuit Court made a determination, in COL 33 of the Order Denying Motion to Waive, that he "will eventually be able to pay" the CVC fees, as well as the ICAC fees. This conclusion is based on the Circuit Court's findings

---

[12] HRS § 706-641(3) provides:

> **§ 706-641 Criteria for imposing fines**. . . .
> . . . .
> (3) The court shall not sentence a defendant to pay a fine unless:
> (a) The defendant is or will be able to pay the fine; and
> (b) The fine will not prevent the defendant from making restitution to the victim of the offense.

[13] The Circuit Court cited State v. Martin, 103 Hawaiʻi 68, 79 P.3d 686 (App. 2003), to support its conclusion, for both the ICAC fees and CVC fees in this case, that the sentencing court should consider the defendant's earning capacity, including future earning capacity. Although Martin touches on the issue with respect to CVC fees (and restitution), Martin did not address ICAC fees. More importantly, the trial court in Martin made no express determination as to Martin's ability to pay and the case primarily addressed that the sentencing court itself must enter findings supporting an ability-to-pay determination. Id. at 77-78, 86, 79 P.3d at 695-96, 704.

and conclusion in COLs 31 that, although Pulgados "has some medical issues, he is otherwise healthy, young, able-bodied, educated, and willing and able to find employment after release from custody," as well as the Circuit Court's further finding and conclusion in COLs 32 that Pulgados "has the ability to become employed in the future; and, when he becomes employed, the minimum payment of $30.00 per month would be feasible."

As noted above in discussing the ICAC fees, we conclude that the evidence as to Pulgados's age, his attainment of a GED, and his physical ability and willingness to engage in some form of work at an indefinite point in the future was insufficient to demonstrate that he would not remain indigent, and unable to pay the CVC fees. The only evidence concerning prior gainful employment was Puglados's testimony that he had been a shuttle driver, which he is not physically able to do again. While there are conceivably pathways through which Pulgados could rehabilitate himself after prison and become sufficiently skilled in his early to mid-40s to be employed in some previously unexplored line of work (and this court hopes that turns out to be the case), there is no evidence in the record to support this conclusion. Nor is there any evidence that the level of income that Pulgados might be able to earn would be sufficient to render him "able to pay" in the future based on Pulgados's other financial circumstances; the only evidence in the record – no home, no savings, no assets of any kind – paint a rather bleak picture of Pulgados's financial circumstances. The Circuit Court's conclusion that Pulgados will in fact find sufficient

work to support himself and will be able to pay thousands of dollars of fees, on top of his restitution payments and fine, was purely speculative.

For these reasons, we conclude that the Circuit Court erred in failing to determine that Pulgados was unable to pay the CVC fees imposed on him pursuant to HRS §§ 706-605(6) & 351-62.6. Accordingly, the Circuit Court erred in imposing the CVC fees and denying Pulgados's request to waive the CVC fees.

B.    Pulgados's Constitution Arguments

The fundamental principles of judicial restraint and constitutional avoidance require that courts abstain from contemplating constitutional issues where such inquiry is unnecessary to dispose of the case at bar.  Hawaii Gov't Employees Ass'n v. Lingle, 124 Hawaiʻi 197, 208, 239 P.3d 1, 12 (2010) (citing the "fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them") (citation omitted); see also State v. Delima, 78 Hawaiʻi 343, 348 n. 7, 893 P.2d 194, 199 n. 7 (1995) (declining to address constitutional argument where statutory grounds were sufficient for disposition); State v. Domingo, 69 Haw. 68, 70, 733 P.2d 690, 692 (1987) (standing for same proposition).  Thus, as was also noted by the Attorney General in her amicus brief, this court need not reach the constitutional issue raised by Pulgados if it finds that the Circuit Court erred in concluding that Pulgados is not eligible for waiver of court fees under HRS §§ 351-62.6(a), 706-605(6), and 846F-3(a).  As that is the case

20

here, we decline to reach Pulgados's constitutional challenges to these statutes.

V.    CONCLUSION

For these reasons, we vacate in part the Amended Judgment, i.e., the imposition of the ICAC and CVC fees.[14]   The Amended Judgment is otherwise affirmed.  This case is remanded to the Circuit Court for such further proceeding as may be necessary to the entry of a further amended judgment consistent with this Opinion.

| On the briefs: | /s/ Lisa M. Ginoza |
| | Chief Judge |
| Benjamin E. Lowenthal, | |
| Office of the Public Defender, | /s/ Katherine G. Leonard |
| for Defendant-Appellant. | Associate Judge |
| | |
| Richard B. Rost, | /s/ Keith K. Hiraoka |
| Deputy Prosecuting Attorney, | Associate Judge |
| County of Maui, | |
| for Plaintiff-Appellee. | |
| | |
| Ewan C. Rayner, | |
| Deputy Solicitor General, | |
| Department of the Attorney General, | |
| for Amicus Curiae, Attorney | |
| General, State of Hawaiʻi. | |

---

[14]    We further note a minor clerical error in the total sum of the two restitution payments stated in the Amended Judgment; $696.00 plus $210.99 equals $906.99, not $916.99.  This error should be corrected on remand.