**Electronically Filed
Supreme Court
SCWC-20-0000075
05-AUG-2022
08:10 AM
Dkt. 17 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

JOSHUA YAMASHITA,
Petitioner/Defendant-Appellant.

_____

SCWC-20-0000075

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000075; CASE NOS. 2CPC-17-0000133, 2CPC-17-0000905,
2CPC-17-0000986, 2CPC-18-0000215, 2CPC-18-0000321,
2CPC-18-0000632, 2CPC-18-0000792, and 2CPC-18-0000828)

AUGUST 5, 2022

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY WILSON, J.

Petitioner/Defendant-Appellant Joshua Yamashita

("Yamashita") was convicted of various drug, theft, fraud, and

property crimes in the Circuit Court of the Second Circuit

("circuit court").[1]  At sentencing, in addition to a five-year

_____

[1]     The Honorable Rhonda I.L. Loo presided.

term of incarceration, Yamashita was ordered to pay a crime victim compensation ("CVC") fee under Hawai'i Revised Statutes ("HRS") §§ 706-605(6) (Supp. 2018) and 351-62.6 (2015) and a drug demand reduction ("DDR") assessment under HRS § 706-650 (Supp. 2018). He objected to imposition of the CVC fee because he was presently unable to pay and would not be able to pay the CVC fee in the future. He also contended both the CVC fee and DDR assessment amounted to unconstitutional taxes. The Intermediate Court of Appeals ("ICA") affirmed the circuit court's imposition of the CVC fee and DDR assessment, finding there was substantial evidence that Yamashita would be able to pay the CVC fee in the future and that the CVC fee and DDR assessment were constitutional fines, not unconstitutional taxes.

The ICA's judgment on appeal is affirmed except as to the issue of Yamashita's ability to pay the CVC fee. His present inability to pay the CVC fee mandated waiver of the fee pursuant to HRS §§ 706-605(6) and 351-62.6.

## II. BACKGROUND

### A. Circuit Court Proceedings

In August 2017, Yamashita pleaded no contest in Case No. 2CPC-17-0000133 (the "First Case") to one count of unauthorized control of a propelled vehicle in violation of HRS

2

§ 708-836; Yamashita was sentenced to four years of probation and ordered to pay restitution and fees.

Between November 20, 2017 and October 30, 2018, Yamashita was charged in seven other cases (the "Other Cases") and subsequently pleaded no contest to drug, theft, fraud, and property crimes in the circuit court.[2]  Under the plea agreement for the Other Cases, Yamashita also admitted to violating the terms and conditions of probation in the First Case.  On May 31, 2019, the circuit court held a sentencing hearing for the Other Cases, and a resentencing hearing for the First Case.  The circuit court entered a judgment on the Other Cases convicting and sentencing Yamashita to a term of incarceration of five years for each felony, one year for each misdemeanor, and thirty days for each petty misdemeanor, to be served concurrently.  The circuit court also ordered Yamashita to pay $1,810.00 in court

---

[2]     In November 2018, Yamashita entered into a plea agreement under which he pleaded no contest to twenty-six other counts in seven other cases (Case Nos. 2CPC-17-0000905, 2CPC-17-0000986, 2CPC-18-0000321, 2CPC-18-0000215, 2CPC-18-0000632, 2CPC-18-0000792, 2CPC-18-0000828), including:  two counts of unauthorized control of a propelled vehicle in violation of HRS § 708-836; two counts of unauthorized entry into motor vehicle in the first degree in violation of HRS § 708-836.5; five counts of theft in the second degree in violation of HRS § 708-831; two counts of theft in the third degree in violation of HRS § 708-832; two counts of theft in the fourth degree in violation of HRS § 708-833; one count of criminal property damage in the third degree in violation of HRS § 708-822; two counts of criminal property damage in the fourth degree in violation of HRS § 708-823; two counts of unauthorized possession of confidential personal information in violation of HRS § 708-839.55; four counts of theft of credit card in violation of HRS § 708-8102; two counts of fraudulent use of a credit card in violation of HRS § 708-8100; one count of promoting a dangerous drug in the third degree in violation of HRS § 712-1243; and one count of prohibited acts related to drug paraphernalia in violation of HRS § 329-43.5.

fines, $8,767.20 in restitution, a $2,075.00 CVC fee under HRS

§§ 706-605(6) and 351-62.6,[3] a $2,500.00 internet crimes against

children ("ICAC") fee,[4] and a $100.00 DDR assessment under HRS

---

[3]     HRS § 706-605(6) provides, in relevant part:

The court shall impose a compensation fee upon every person convicted of a criminal offense pursuant to section 351-62.6; provided that the court shall waive the imposition of a compensation fee if it finds that the defendant is unable to pay the compensation fee.

HRS § 351-62.6 provides:

(a) The court shall impose a compensation fee upon every defendant who has been convicted or who has entered a plea under section 853-1 and who is or will be able to pay the compensation fee. The amount of the compensation fee shall be commensurate with the seriousness of the offense as follows:

(1) Not less than $105 nor more than $505 for a felony;
(2) $55 for a misdemeanor; and
(3) $30 for a petty misdemeanor.

The compensation fee shall be separate from any fine that may be imposed under section 706-640 and shall be in addition to any other disposition under this chapter; provided that the court shall waive the imposition of a compensation fee if the defendant is unable to pay the compensation fee. Moneys from the compensation fees shall be deposited into the crime victim compensation special fund under section 351-62.5.

(b) The criteria of section 706-641 may apply to this section. In setting the amount of the compensation fee to be imposed, the court shall consider all relevant factors, including but not limited to:

(1) The seriousness of the offense;
(2) The circumstances of the commission of the offense;
(3) The economic gain, if any, realized by the defendant;
(4) The number of victims; and
(5) The defendant's earning capacity, including future earning capacity.

(c) The compensation fee shall be considered a civil judgment.

[4]     In addition to a CVC fee and DDR assessment, the circuit court also originally imposed an ICAC fee pursuant to HRS § 846F-3 (2014), which provides in relevant part that "[t]he court shall order every defendant to pay an [ICAC] fee of up to $100 for each felony or misdemeanor conviction; provided that no fee shall be ordered when the court determines that the defendant is unable to pay the fee." HRS § 846F-3(a). However, the circuit court ultimately found that Yamashita was presently unable to pay and waived the ICAC fee.

(continued . . .)

§ 706-650.[5] The circuit court then entered an Order of

Resentencing in the First Case whereby Yamashita's probation was

revoked; he was resentenced to serve five years of incarceration

---

(. . . continued)

Further, we note that with respect to the Other Cases, the circuit court's May 31, 2019 judgment levied an ICAC fee totaling $2,500.00 (25 counts each received an ICAC fee of $100.00, for a total ICAC fee of $2,500.00). However, the judgment contains a typographical error that states the total ICAC fee is $2,100.00. This typographical error appears to have impacted some court proceedings and party submissions. The correct amount of the ICAC fee imposed with respect to the Other Cases is $2,500.00.

[5] HRS § 706-650 provides, in relevant part:

(1) In addition to any disposition authorized by chapter 706 or 853, any person who is:

(a) Convicted of an offense under part IV of chapter 712, except sections 712-1250.5 and 712-1257;

. . . .

shall be ordered to pay a monetary assessment under subsection (2), except as provided under subsection (5).

. . . .

Notwithstanding sections 706-640 and 706-641 and any other law to the contrary, the assessments provided by this section shall be in addition to and not in lieu of, and shall not be used to offset or reduce, any fine authorized or required by law and shall be paid pursuant to section 706-651.

. . . .

(4) All monetary assessments paid and interest accrued on funds collected pursuant to this section shall be deposited into the drug demand reduction assessments special fund.

(5) If the court determines that the person has the ability to pay the monetary assessment and is eligible for probation or will not be sentenced to incarceration, unless otherwise required by law, the court may order the person to undergo a substance abuse treatment program at the person's expense. If the person undergoes a substance abuse treatment program at the person's expense, the court may waive or reduce the amount of the monetary assessment. Upon a showing by the person that the person lacks the financial ability to pay all or part of the monetary assessment, the court may waive or reduce the amount of the monetary assessment.

5

with credit for time served (to be served concurrently with the sentences in the Other Cases) and ordered to pay $1,000 in restitution, a $105 CVC fee, and a $100 ICAC fee.

Taking the First Case and the Other Cases together, Yamashita was sentenced to financial penalties totaling $1,810 in fines, $9,767.20 in restitution, a $2,180 CVC fee, a $2,600 ICAC fee, and a $100 DDR assessment.[6]

The circuit court ordered that Yamashita pay, in order: restitution, the CVC fee, the ICAC fee, the DDR assessment, and the fines at the rate of twenty-five percent of gross earnings while incarcerated, then at a rate of at least $30.00 per month upon his release. At sentencing, Yamashita requested a waiver of the CVC fee[7] and the circuit court set an evidentiary hearing to determine his ability to pay and whether his request for a waiver of the CVC fee should be granted.

---

[6] We note that Yamashita's appeal encompasses all eight of his circuit court cases to which he was sentenced and/or resentenced on May 31, 2019 (the First Case, along with the Other Cases). However, some court proceedings and most party submissions in the record refer only to the $2,075 CVC fee and the $2,500 ICAC fee levied in the Other Cases. This opinion treats the CVC fee at issue as one combined CVC fee as levied across all eight cases, in the amount of $2,180.00 (the $2,075.00 CVC fee from the Other Cases, plus the $105.00 CVC fee from the First Case). Additionally, this opinion treats the ICAC fee at issue as one combined ICAC fee in the amount of $2,600.00 (the $2,500 ICAC fee from the Other Cases, plus the $100.00 ICAC fee from the First Case). Further proceedings consistent with this opinion shall use these same combined amounts for the CVC fee ($2,180.00) and the ICAC fee ($2,600.00).

[7] Yamashita does not argue before this court that the circuit court abused its discretion in imposing a DDR assessment, but does contend that the DDR assessment is an unconstitutional tax. Thus, the DDR assessment will only be discussed in the context of Yamashita's constitutional arguments.

In support of his request for a waiver of the CVC fee, Yamashita filed a motion to reconsider all of his sentences across the First Case and the Other Cases ("Motion to Reconsider Sentence") asking the court to waive the CVC fee because he was unable to pay it.  Yamashita relied on Haw. Insurers Council v. Lingle, 120 Hawaiʻi 51, 59, 201 P.3d 564, 572 (2008) in arguing that the CVC fee and DDR assessment were unconstitutional taxes given the constitutional principle that only the legislative branch of government has the authority to tax.  He argued that the CVC fee and DDR assessment were not constitutionally permissible user fees, paid "in exchange for a particular governmental service which benefits the party paying the fee . . . to compensate the governmental entity providing the services for its expenses[,]" but rather, were taxes "imposed by the government on persons, entities, transactions, or property to yield public revenue[,]" which may not be delegated by the legislature.  Lingle, 120 Hawaiʻi at 60, 62, 201 P.3d at 573, 575 (internal quotation marks omitted).  Yamashita contended that to determine whether a charge is a user fee, as opposed to a tax, the court should apply the three-part test in Lingle, 120 Hawaiʻi at 62, 201 P.3d at 575, which considers whether the charge "(1) applies to the direct beneficiary of a particular service, (2) is allocated directly to defraying the costs of providing the service, and (3) is reasonably proportionate to the benefit

7

received."  Under the Lingle test, Yamashita argued that the CVC fee and DDR assessment were unconstitutional taxes because they were set and collected at the court's discretion, primarily, "to generate revenue."

The circuit court held an evidentiary hearing to assess Yamashita's ability to pay the CVC fee and to determine whether he should be granted a waiver of said fee.  At the hearing, Yamashita testified that he was twenty-nine years old and had a GED.  He testified that, prior to incarceration, he was "on the streets," and his last non-prison job was as a roofer.  Yamashita testified that he was currently incarcerated at Halawa Correctional Facility ("HCF") and was employed at HCF as a plumber.  He confirmed that he had not been trained as a plumber, but "learned on the job."  Yamashita testified that as a plumber he made twenty-five cents an hour and worked about thirty-five hours a week, which averaged to about $15.00 to $20.00 per month in prison income.  He also stated that his mother sometimes put $100.00 per month in his HCF account, when she was able to.  He testified that $30.00 per month was automatically removed from his account by the "[c]ourt" and that his HCF account was currently empty.  He claimed that he had no other sources of income and had no investments or assets.  He stated that he had two daughters and paid $100.00 in child support every month.  Yamashita testified that he had no medical

issues, and that he could get a full-time job and intended to work to support himself and his daughters and to pay off his financial obligations upon release from prison. Yamashita testified that he was presently unable to pay the CVC fee, but agreed that if he became employed post-incarceration, it would be "feasible" for him to pay $30.00 per month after his release.

After the evidentiary hearing to assess Yamashita's ability to pay the CVC fee, the circuit court filed an order on January 15, 2020 granting in part and denying in part Yamashita's Motion to Reconsider Sentence, and denying Yamashita's request for a waiver of the CVC fee. Based on Yamashita's testimony, in its Findings of Fact ("FOFs") and Conclusions of Law ("COLs"), the circuit court concluded that Yamashita was "healthy, young, ha[d] his GED, [wa]s able-bodied, and [wa]s willing and able to find employment after release from custody." The circuit court found that "Defendant's plumbing job at Halawa will provide him with training and a skillset that will allow him to become gainfully employed outside of prison." Thus, the circuit court determined that because Yamashita had "skills as a plumber, was employed at his evidentiary hearing, and ha[d] the ability to become employed in the future," paying $30.00 per month post-incarceration "would be feasible" and he would "eventually be able to pay" his financial obligations, "including his CVC fees."

As to Yamashita's constitutional claims, the circuit court concluded that because the CVC fee and DDR assessment were expended for "legitimate criminal justice purposes," both charges were constitutional.[8]

## B.   Appellate Proceedings

### 1.   ICA Appeal

Yamashita argued in his appeal to the ICA that the circuit court erred in denying his Motion to Reconsider Sentence.[9]  He first posited that the circuit court erroneously "concluded that it must consider [his] future earning capacity" when imposing the CVC fee, and contended that future earning capacity was only relevant to the amount of the CVC fee under HRS § 351-62.6(b).[10]  The State denied that the circuit court

_____

[8]     In support of its finding that the CVC fee and DDR assessment were constitutional, the circuit court relied on a "framework" adopted by a Texas appeals court wherein a court cost was constitutional if it was "expended for legitimate criminal justice purposes." Peraza v. State, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015). According to Peraza, "[a] criminal justice purpose is one that relates to the administration of our criminal justice system.  Whether a criminal justice purpose is 'legitimate' is a question to be answered on a statute-by-statute/case-by-case basis." Id. at 517-18.  Under the Texas framework, the circuit court found that CVC funds were expended for a legitimate criminal justice purpose, namely, "to provide financial aid to victims of crimes," and thus, concluded that HRS § 351-62.5(b) was not unconstitutional.  The circuit court found that DDR funds were also expended for a legitimate criminal justice purpose, namely, "to supplement substance abuse treatment and other substance abuse demand reduction programs[,]" and thus, concluded that HRS § 706-650 was not unconstitutional.

[9]     Yamashita specifically challenged the circuit court's COLs Nos. 4-5, 10, 13, 15, 17-19, and 22-23.

[10]     Yamashita noted that even if the court could consider future earning capacity, the circuit court's "highly speculative assumption" that he

(continued . . .)

abused its discretion by imposing a CVC fee and argued that the "most reasonable and consistent reading" of HRS §§ 706-605(6) and 351-62.6(a) together permitted consideration of a defendant's future ability to pay CVC fees. Yamashita responded that this interpretation of the statutes did not align with legislative intent: "protecting the indigent" from having to pay a CVC fee.

The ICA issued a Summary Disposition Order ("SDO") affirming the circuit court's Order of Resentencing, Judgments of Conviction, and Reconsideration Order. In affirming the circuit court's imposition of the CVC fee, the ICA reasoned that the circuit court's unchallenged findings established that Yamashita would be able to pay the CVC fee in the future because

> Yamashita voluntarily applied for his plumbing job at Halawa because he wanted to work; the plumbing job will provide him with training and a skillset that will allow him to become gainfully employed outside of prison; he was in good health and faced no kind of medical issue that would prevent him from working; and he intended to work full-time once released from prison or placed on parole to support his two daughters and pay his court-ordered restitution, fines, and fees.

Given this evidence, the ICA concluded that the circuit court's finding that Yamashita would be able to pay the CVC fee was not clearly erroneous.

---

(. . . continued)

would be able to pay the CVC fee in the future was "not supported by the evidence" and was not reasonably foreseeable.

11

As to Yamashita's constitutional argument, the ICA found that the CVC fee and DDR assessment were constitutional criminal fines, citing its decision in State v. Adcock, 148 Hawaiʻi 308, 320–21, 473 P.3d 769, 781–82 (App. 2020), where it held that "the CVC fee is a fine, not a tax," because (1) "it is a penalty imposed after a criminal conviction[;]" (2) "it is . . . paid into a special fund in the state treasury that does not reimburse payments related to the defendant's prosecution[;]" and (3) "it makes the severity of the crime a criterion to be considered when the court orders the payment." The ICA reasoned that the "same analysis" applied to the DDR assessment in the present case. Thus, the ICA upheld the constitutionality of both the CVC fee and DDR assessment.

**2. Application for Writ of Certiorari**

Yamashita filed a timely application for writ of certiorari on March 1, 2021. In his application, Yamashita argued that the ICA gravely erred by (1) affirming the circuit court's determination that he would be able to pay the $2,180 CVC fee; and (2) declining to apply the three-part test in State v. Medeiros, 89 Hawaiʻi 361, 973 P.2d 736 (1999), to determine whether the CVC fee and DDR assessment were unconstitutional taxes. Yamashita's application for writ of certiorari was accepted.

12

### III.   STANDARDS OF REVIEW

#### A.   Findings of Fact and Conclusions of Law

This court reviews the circuit court's FOFs "under the clearly erroneous standard." 7's Enters. v. Del Rosario, 111 Hawai'i 484, 489, 143 P.3d 23, 28 (2006).

> A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. COLs are reviewed de novo under the right/wrong standard. Id. "A COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 119, 839 P.2d 10, 29 (1992). Mixed questions of law and fact are reviewed under the clearly erroneous standard. Narayan v. Ass'n of Apartment Owners of Kapalua Bay Condo., 140 Hawai'i 75, 83, 398 P.3d 664, 672 (2017).

#### B.   Constitutionality of Statutes

"We review questions of constitutional law de novo, under the right/wrong standard." Tax Found. of Haw. v. State, 144 Hawai'i 175, 185, 439 P.3d 127, 137 (2019) (quoting State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010)).

## IV. DISCUSSION

**A. The Circuit Court Erred by Imposing a CVC Fee on Yamashita Pursuant to HRS §§ 706-605 and 351-62.6 Because He Was Unable to Pay the CVC Fee**

The ICA erred by affirming the circuit court's imposition of a CVC fee pursuant to HRS §§ 706-605 and 351-62.6 because Yamashita was presently unable to pay the fee. The issue in the present case is whether the court, in imposing a CVC fee, should have considered only Yamashita's present ability to pay, or whether it was permitted to also consider his future ability to pay. Resolution of this issue hinges on the interpretation of HRS §§ 706-605 and 351-62.6, both of which apply in the present case because they both provide for the imposition of a CVC fee on every convicted criminal defendant.[11] We consider the following rules of statutory construction in interpreting their meaning:

> First, legislative enactments are presumptively valid and should be interpreted in such a manner as to give them effect. Second, laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. Third, where there is a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored.

---

[11]    See supra note 3.

14

Richardson v. City & County of Honolulu, 76 Hawai'i 46, 54–55, 868 P.2d 1193, 1201–02 (1994), reconsideration denied, 76 Hawai'i 247, 871 P.2d 795 (1994), judgment aff'd, 124 F.3d 1150 (9th Cir. 1997) (internal quotation marks, brackets, and citations omitted).

Under the plain language of both HRS §§ 706-605 and 351-62.6, the court must (1) impose a CVC fee on every convicted defendant and (2) waive the CVC fee if the defendant is presently unable to pay.  HRS § 706-605(6) provides that "[t]he court shall impose a [CVC] fee upon every person convicted of a criminal offense pursuant to section 351-62.6" but states that "the court shall waive the imposition of a [CVC] fee if it finds that the defendant is unable to pay the [CVC] fee."  HRS § 351-62.6(a) specifies that a CVC fee shall be imposed "upon every defendant who has been convicted or who has entered a plea under section 853-1 and who is or will be able to pay the [CVC] fee" but states, like HRS § 706-605(6), "that the court shall waive the imposition of a [CVC] fee if the defendant is unable to pay the [CVC] fee."  It is evident that both statutes mandate the imposition of a CVC fee and mandate waiver when a defendant is presently unable to pay.

The plain language of HRS §§ 706-605 and 351-62.6, however, differs slightly as to under what circumstances the court should impose a CVC fee:  HRS § 706-605(6) provides that a

15

CVC fee shall be imposed on "every person convicted of a criminal offense" while HRS § 351-62.6(a) provides that a CVC fee shall be imposed on every defendant who has been convicted of or pleaded to a criminal offense and "who is or will be able to pay" the fee. Thus, given this differing language, the issue is whether there is a "plainly irreconcilable conflict" between HRS §§ 706-605(6) and 351-62.6(a), or whether the two statutes "simply overlap in their application." Id. at 55, 868 P.2d at 1202. There is no "plainly irreconcilable conflict" between the two statutes as both statutes overlap and provide that the court "shall waive" the CVC fee if "the defendant is unable to pay[.]" HRS §§ 706-605(6), 351-62.6(a). Under both HRS §§ 706-605(6) and 351-62.6(a), if the court determines the defendant is presently unable to pay the CVC fee, the court is required to waive the fee and there is no need to determine whether the defendant "will be able to pay" the fee under HRS § 351-62.6(a).

The legislative history of both statutes evinces the legislature's intent to mandate waiver of CVC fees when the defendant is presently unable to pay. The authority to impose CVC fees was established in 1998 by Act 206, which added now-HRS § 351-62.6 in its entirety and amended HRS § 706-605 to add a provision imposing CVC fees. 1998 Haw. Sess. Laws 717. Neither Act 206 itself nor the legislature's committee reports explain why HRS § 351-62.6, but not HRS § 706-605, imposes a CVC fee on

16

a defendant who "will be able to pay."  The legislative history of Act 206, however, clearly reflects the legislative intent that waiver of the CVC fee be mandatory, rather than discretionary, if a defendant is presently unable to pay.[12] Conf. Comm. Rep. No. 123, in 1998 House Journal, at 1003, 1998 Senate Journal, at 796-97 (amending the bill to require that the court waive the CVC fee if the defendant was unable to pay); Conf. Comm. Rep. No. 156, in 1998 House Journal, at 1025-26, 1998 Senate Journal, at 819 (same); H. Stand. Comm. Rep. No. 894-98, in 1998 House Journal, at 1404 (same).  Thus, the legislative history of HRS §§ 351-62.6 and 706-605 supports an interpretation wherein the guiding inquiry in imposing a CVC fee is whether the defendant is presently able to pay such a fee. If not, the court is required to waive the fee.

In this case, both the circuit court and the ICA emphasized the language in HRS § 351-62.6(a) that purports to impose a CVC fee on every defendant "who is or will be able to

---

[12]    The Senate Committee on Judiciary was the only committee to posit that CVC fees should be discretionary instead of mandatory, voicing a "concern[] that requiring mandatory compensation [of CVC fees] would eliminate the discretion of the Judiciary in imposing these penalties" and stating that "[j]udges should have the discretion not to impose compensation fees on a defendant who is unable to pay."  H. Stand. Comm. Rep. No. 894-98, in 1998 House Journal, at 1404.

pay the [CVC] fee."[13]  In its SDO, the ICA pointed to its holding in State v. Pulgados, 148 Hawai'i 361, 477 P.3d 155 (App. 2020), cert. denied, No. SCWC-19-0000577, 2021 WL 815862 (Mar. 3, 2021), which stated that "a sentencing court must impose CVC fees upon the satisfaction of two conditions:  (1) that the defendant has been convicted of a criminal offense, including a conviction upon a plea; and (2) a determination that the defendant is or will be able to pay the CVC fee."  148 Hawai'i at 369, 477 P.3d at 163.  However, imposing a CVC fee solely considering the two aforementioned conditions relied on by the ICA ignores the provisions in both HRS §§ 351-62.6(a) and 706-605(6) that the court must waive the CVC fee when the defendant is presently unable to pay.  Mandatory waiver where the defendant is presently unable to pay renders irrelevant whether a defendant may gain the ability to pay in the future.  Thus, to the extent that the holding in Pulgados allows a court to impose a CVC fee on a defendant who is presently unable to pay, that holding is overruled.

In the present case, the circuit court concluded that Yamashita was "presently unable to pay ICAC fees" given his "limited earning potential" in prison, his current prison

---

[13]  In its COL No. 18, the circuit court found that "[a]s part of the CVC statute, the legislature included specific language that requires a judge's contemplation of a defendant's present and future abilities to pay."

income, and his child support and restitution obligations, and waived the $2,600.00 ICAC fee.[14]  At the evidentiary hearing to determine whether Yamashita should be granted a waiver of the CVC fee, Yamashita testified that he had no assets or investments and no consistent income other than the twenty-five cents an hour he earned from his HCF plumbing job.[15]  Yamashita also testified that he paid $100.00 per month in child support and that for every $100.00 accrued in his HCF account, $30.00 was automatically withdrawn and applied toward his court-ordered financial obligations.

Unlike its decision not to impose an ICAC fee, the circuit court made no finding as to Yamashita's present ability to pay a CVC fee, concluding only that Yamashita was "willing and will eventually be able to pay the restitutions, fees, and fines, including his CVC fees."  However, the circuit court's

---

[14]     The circuit court's COL No. 20 provided:

The Court finds that, taking into account only [Yamashita]'s current ability to pay, he is unable to pay the $[2,600] in ICAC fees.  [Yamashita]'s current income while incarcerated does not cover his liabilities that include ICAC fees.  All of [Yamashita]'s current income goes towards higher-ranking priorities such as his child support obligations and restitution in his cases.  Even after his current income is garnished for those aforementioned liabilities, he still owes all payments on his CVC fees.  Taking into account only his current ability to pay, because he is incarcerated with limited earning potential, he has no present opportunity to begin to pay down his ICAC assessments.  For these reasons, the Court determines that [Yamashita] is presently unable to pay ICAC fees.

[15]     Yamashita testified that he worked approximately thirty-five hours a week and averaged about $15.00 to $20.00 a month in prison income. He also testified that his mother sometimes deposited $100.00 in his prison account, but clarified that these deposits were irregular.

reasoning as to Yamashita's present inability to pay an ICAC fee also applies to his present inability to pay a CVC fee.[16] We agree with the circuit court's conclusion that Yamashita is unable to pay an ICAC fee, and find that he is also unable to pay a CVC fee and that the CVC fee should be waived.[17] The circuit court's findings, that the ICA found supported imposing a CVC fee, bore on Yamashita's future—not present—ability to pay the fee.[18] Thus, because Yamashita is presently unable to pay, the circuit court erred by imposing a CVC fee and the ICA erred by affirming the circuit court's imposition of such a fee.[19]

---

[16] Similar to the language in HRS §§ 351-62.6(a) and 706-605(6) that mandates waiver where a defendant is presently unable to pay CVC fees, HRS § 846F-3(a) provides that "no [ICAC] fee shall be ordered when the court determines that the defendant is unable to pay the fee."

[17] The circuit court imposed a $2,180.00 CVC fee and a $2,600.00 ICAC fee on Yamashita and ultimately determined that Yamashita was not presently able to pay the $2,600.00 ICAC fee.

[18] The circuit court reasoned in COL No. 13 that Yamashita was "healthy, young, . . . able-bodied, and willing and able to find employment after release from custody." The circuit court found in COL No. 14 that Yamashita's work as a plumber at HCF "will provide him with training and a skillset that will allow him to become gainfully employed outside of prison." The circuit court found in COL No. 15 that because Yamashita "has skills as a plumber, was employed at his evidentiary hearing, and has the ability to become employed in the future[,]" that "when he becomes employed outside of prison, the minimum payment of $30.00 per month would be feasible." The circuit court concluded in COL No. 23 that although Yamashita was "not currently in a position where he is able to pay ICAC fees because of his imprisonment and other financial obligations[,]" he was "willing and will eventually be able to pay the restitutions, fees, and fines, including his CVC fees."

[19] The ICA, in holding the circuit court did not err by imposing a CVC fee on Yamashita, also found, in part, that "Yamashita voluntarily applied for his plumbing job at [HCF] because he wanted to work" and that "he intended to work full-time once released from prison or placed on parole to support his two daughters and pay his court-ordered restitution, fines, and

(continued . . .)

**B.   The CVC Fee and DDR Assessment Are Not Unconstitutional Taxes**

The CVC fee and DDR assessment were constitutional criminal fines, not unconstitutional taxes.[20]  "A fine . . . is a 'retributive payment' due the sovereign[,]" and "advance[s] punitive objectives[.]"  State v. Gaylord, 78 Hawai'i 127, 152, 890 P.2d 1167, 1192 (1995) (quoting State v. Murray, 63 Haw. 12, 16, 621 P.2d 334, 337 (1980), then quoting Standards for Criminal Justice § 18-3.16 cmt. (Am. Bar Ass'n 1994)).  Criminal

───────────────

(. . . continued)

fees."  A defendant's expressed willingness to work while or after being incarcerated does not bear on their present or future ability to pay, and moreover, should not increase their risk of being subjected to financial punishment--that is, being saddled with court-imposed costs.  As such, we do not regard Yamashita's willingness to work at HCF while incarcerated and after his release from prison as weighing in favor of imposing a CVC fee.

[20]   The Hawai'i Constitution directs that "[t]he taxing power shall be reserved to the State[.]"  Haw. Const. art. VIII, § 3.  This court has confirmed that "[t]he power of taxation is essentially a legislative power" and "cannot be delegated" to the executive branch.  Lingle, 120 Hawai'i at 59, 201 P.3d at 572 (quoting McCandless v. Campbell, 20 Haw. 411, 420 (1911)).  Yamashita contends that to determine whether the CVC fee and DDR assessment amount to unconstitutional taxes, we should apply the test developed by this court in Medeiros.  In Medeiros, a defendant sought to enjoin enforcement of a Honolulu ordinance that permitted the City and County to collect a fee from "a person convicted of any misdemeanor or felony" for "services performed by the city in connection with the arrest, processing, investigation, and prosecution of the convicted person."  89 Hawai'i at 362 n.1, 973 P.2d at 737 n.1.  This court invalidated the ordinance, and set forth a three-part test: if "the charge (1) applies to the direct beneficiary of a particular service, (2) is allocated directly to defraying the costs of providing the service, and (3) is reasonably proportionate to the benefit received[,]" the charge is a permissible user fee, not an unconstitutional tax.  Id. at 367, 973 P.2d at 742.
    In Lingle, however, this court clarified that the Medeiros test "is properly confined to evaluating whether the charge is a user fee or a tax."  120 Hawai'i at 64, 201 P.3d at 577.  As discussed, infra, the CVC fee and DDR assessments are neither user fees nor taxes, but rather, criminal fines.  Therefore, the Medeiros test is not applicable to this case.

fines are expressly permitted under the Hawaiʻi Penal Code "as a means of penalizing the offender."  HRS § 706-640 cmt.

As the ICA held in its SDO, the CVC fee is a permissible criminal fine, not an unconstitutional tax, because: (1) the charge is "imposed after criminal conviction[]" and is "authorized" by the legislature as "punishment for criminal behavior[;]" (2) the charge is "paid into [a] special fund[] . . . that do[es] not reimburse payments related to" or "offset the costs of" the defendant's prosecution; and (3) when imposing a CVC fee, the court must consider "the severity of the crime" and may also consider the criteria in HRS § 706-641, which applies to other criminal fines.  Adcock, 148 Hawaiʻi at 320, 473 P.3d at 781.

Furthermore, the statutes authorizing the CVC fee and DDR assessment fall within HRS chapter 706, titled "Disposition of Convicted Defendants," which contains all provisions related to criminal punishment and sentencing, including probation, imposition of fees, fines, and restitution, and imprisonment. See HRS chapter 706.  Both the CVC fee and DDR assessment are mandatory punishments imposed upon convicted defendants—a court may waive the CVC fee only if the defendant is unable to pay, HRS §§ 706-605(6), 351-62.6, and may waive the DDR assessment only if the defendant is unable to pay or is ordered to enter a

22

substance abuse treatment program at the defendant's own expense, HRS § 706-650. And because the court is required to consider the severity of the defendant's crime when setting the amount of the CVC fee and DDR assessment, the more serious the offense, the higher the maximum amount the court may impose. See HRS §§ 351-62.6 and 706-650. Because the CVC fee and DDR assessment are criminal fines and not taxes, the ICA did not err in upholding the constitutionality of the CVC fee and DDR assessment.

## V. CONCLUSION

For the foregoing reasons, the ICA's January 6, 2021 Judgment on Appeal is vacated in part as to its imposition of the $2,180.00 CVC fee, as it was based on the conclusion that Yamashita will be able to pay the CVC fee in the future. The Judgment on Appeal is affirmed in all other respects. The case is remanded to the circuit court for further proceedings consistent with this opinion.

Benjamin E. Lowenthal,
for Petitioner

Richard B. Rost,
for Respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

